**UNITED STATES of America,
Appellee,**

v.

**Arthur NEEDLES, Appellant.**

**No. 361, Docket 72–1704.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 4, 1972.

Decided Jan. 11, 1973.

Robert E. Goldman, New York City (Kuh, Goldman, Cooperman & Levitt, New York City, Steven H. Gifis, Newark, N. J., on the brief), for appellant.

Thomas R. Pattison, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty. for Eastern District of New York, L. Kevin Sheridan, Asst. U. S. Atty., on the brief), for appellee.

Before LUMBARD, FEINBERG and MANSFIELD, Circuit Judges.

FEINBERG, Circuit Judge:

Arthur Needles appeals from a judgment of conviction entered upon a guilty plea in the United States District Court for the Eastern District of New York, Joseph C. Zavatt, J., to a charge of unregistered possession of a submachine gun, in violation of the Federal Gun Control Act of 1968, 26 U.S.C. § 5861(d). Prior to imposing a prison sentence of three years, the judge refused to allow appellant to withdraw his guilty plea. On this appeal, Needles claims that he should have been allowed to withdraw his guilty plea because of an inaccurate and unfair pre-sentence report, and that the sentence was improper because it was based upon that report. We affirm the judgment of conviction and imposition of sentence.

I

Needles entered his guilty plea before Judge Zavatt on December 29, 1971. At the time, appellant faced an indictment that charged him with 30 separate violations of the Gun Control Act. Appellant was represented by competent counsel, who apparently negotiated an understanding with the Assistant United States Attorney in charge of the case to move to dismiss the remaining 29 counts of the indictment after appellant pleaded guilty to, and was sentenced on, one. The judge was informed of that agreement in open court during the course of his questioning to determine, in the words of Fed.R.Crim.P. 11, whether the plea was "made voluntarily with understanding of the nature of the charge and the consequences of the plea" and whether there was "a factual basis for the plea." The record indicates that the judge properly had no doubt on either score. Accordingly, he accepted the plea to count six only of the indictment;[1] after sentence had been imposed some months later, the remaining counts were dismissed.

The scheduled date of sentence was April 10, 1972. Shortly before that day, counsel for Needles requested permission to see the pre-sentence report. At the start of the sentencing hearing, the judge declared a recess of "some twenty minutes" during which time the complete report was turned over to Needles and his counsel. After this interval, defendant's counsel reported that Needles had "instructed" him to move, pursuant to Fed.R.Crim.P. 32(d), for permission to withdraw the guilty plea because the report was "replete with statements which are contradictory to the truth and . . . highly derogatory of the defendant." The judge denied the motion. An extended colloquy followed regarding

---

1. Although appellant claims that this was the "least significant count" in the indictment, this was not so. Twenty-six of the thirty counts—including count six—charged violations of 26 U.S.C. § 5861, which are punishable by imprisonment of up to ten years and by fines of not more than $10,000. 26 U.S.C. § 5871. The first four counts alleged violations of 18 U.S.C. §§ 922, 923, punishable by only five years in prison and a maximum fine of $5,000. 18 U.S.C. § 924(a).

alleged inaccuracies in the pre-sentence report, which we leave for discussion below.

■ Appellant argues that the "surprise" disclosure of a highly prejudicial and inaccurate pre-sentence report entitled him to a "pre-sentence withdrawal" of a negotiated guilty plea, that a defendant who complains of untrue or unfair representations in a pre-sentence report concerning non-pleaded counts should be entitled to withdraw his plea of guilty, and that the trial judge abused his discretion in not giving careful consideration to the motion.

Appellant claims an absolute right under the circumstances to withdraw his guilty plea because of the allegedly inaccurate pre-sentence report. Such reports are often uncomplimentary to a defendant, though perhaps the occasions when the content truly "surprises" him are less than frequent. The thought immediately comes to mind that if such "surprises" were a legitimate ground for withdrawal of a guilty plea, an incentive would be created for not turning over pre-sentence reports, surely an unhappy result. Putting to one side this perhaps unworthy notion, one searches for a reasoned connection between an allegedly unfair pre-sentence report and the right to withdraw a guilty plea. That plea, after all, is the formal admission by a defendant in open court—and here with the advice of competent counsel—that he committed the crime. See McCarthy v. United States, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L.Ed.2d 418 (1969). Of what relevance to that admission, then, is the discovery some months later that the sentencing judge has been furnished allegedly inaccurate derogatory information? Surely this has nothing to do with a defendant's innocence or guilt of the crime to which he has already pleaded. Nor would it affect the question whether he understood the charge against him when he admitted his guilt.

See generally McCarthy v. United States, *supra*.

■ The only issue touching on the guilty plea as to which the alleged errors in the pre-sentence report might arguably be relevant is a defendant's understanding of the "consequences" of his plea when he made it. See Fed.R.Crim. P. 11. The principal "consequence," of course, is the possibility of imprisonment, but this was explained to appellant at the December 29 hearing. We realize that it is the probability of imprisonment, not merely the possibility, that is of crucial interest to a defendant. Nonetheless, "consequence" in this context does not mean a defendant's expectation of leniency, unless it was induced by a government promise, see United States v. Lester, 247 F.2d 496, 501 (2d Cir. 1957); cf. United States v. Norstrand Corp., 168 F.2d 481 (2d Cir. 1948); no such promise was made here by the prosecutor, the judge or anyone else. Cf. United States ex rel. La Fay v. Fritz, 455 F.2d 297 (2d Cir.), cert. denied, 407 U.S. 923, 92 S.Ct. 2471, 32 L. Ed.2d 809 (1972). Needles was told only that the Government would move to dismiss the remaining 29 counts of the indictment. This promise was kept at a substantial advantage to defendant, since his potential term of imprisonment was reduced considerably. Appellant's only claim of misrepresentation is that he believed that the prosecutor would make no recommendation as to sentence, that the information contained in the report could only have come from the prosecutor, and that this amounted to bad faith.[2] No such argument was made at the time to the district court. More significantly, no defendant can reasonably expect the probation office to refrain from seeking whatever information the prosecutor may have regarding the case then before the court or any other case involving that defendant. In fact, failure to so inquire or refusal to respond

---

2. On this point appellant cites Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), a case manifestly inapplicable on its facts.

accurately would be a breach of duty. What appellant's argument is reduced to, in the last analysis, is that the information that led to a 30-count indictment should have been hidden from the sentencing judge and that appellant could reasonably have so expected. The argument falls of its own weight.

■ Appellant cites United States v. Doyle, 348 F.2d 715 (2d Cir.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed. 2d 84 (1965), to support the proposition that he had an absolute right to withdraw his plea to one count if he was prepared to stand trial immediately on all 30 counts. In that case, which involved securities act violations, Doyle had pleaded guilty to one count of an 11-count indictment and had received a short prison sentence. On appeal, Doyle argued, inter alia, that the sentence was improper because before imposing it the judge had considered stock transactions covered by other counts of the indictment. In rejecting the contention, we said, id. at 721:

> To argue that the presumption of innocence is affronted by considering unproved criminal activity is as implausible as taking the double jeopardy clause to bar reference to past convictions. . . . Indeed, Doyle's protests are almost ludicrous as applied to the present facts. The Government was ready to proceed on all the counts; simply by adhering to his former plea Doyle could have had a public trial where he could dispute all the Government's charges, and fully preserve the points dealt with in Part I of this opinion as well. It was he, on the advice of many highly sophisticated counsel, who avoided airing of the facts by a guilty plea.

Since appellant in this case said to Judge Zavatt on April 10, 1972 that he was willing to go to trial on all counts, he claims that Doyle required the judge to let him do so. The claim is unfounded. Just before the quoted language, we said in Doyle, id:

The narrowing of the indictment to a single count limits the maximum punishment the court can impose but not the scope of the court's consideration within the maximum. The dismissal of the other counts at the Government's request was not an adjudication against it on the merits, even though, as a result of the statute of limitations, no further prosecution can occur for the offenses there charged. The aim of the sentencing court is to acquire a thorough acquaintance with the character and history of the man before it. Its synopsis should include the unfavorable, as well as the favorable, data, and few things could be so relevant as other criminal activity of the defendant, particularly activity closely related to the crime at hand. We adhere to the proposition that "few things could be so relevant" in the sentencing of Needles "as other criminal activity . . . related to the crime at hand." See also Williams v. New York, 337 U.S. 241, 246–251, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); United States v. Sweig, 454 F.2d 181, 183–184 (2d Cir. 1972); United States v. Cifarelli, 401 F.2d 512, 514 (2d Cir.) (per curiam), cert. denied, 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 448 (1968).

■ The final claim regarding the guilty plea is that the trial court abused its discretion by failing to give "careful" consideration to appellant's motion to change his plea. Appellant points to the speed with which the judge, at the April 10 hearing, denied the motion after defendant's counsel had stated the reason for it. But speed is not necessarily inconsistent with careful consideration, any more than delay is a guaranty of a wise decision. At that point in the hearing, the only reason given to the judge for the withdrawal was that the pre-sentence report "is replete with statements which are contradictory to the truth and is highly derogatory of the defendant . . . ." Based on that statement, it was entirely proper for the judge to decide that he needed no fur-

ther argument on the issue of change of plea, knowing that he could thereafter hear the defendant further on the claimed inaccuracies as they bore on the question of sentence.[3] Thus, there was no abuse of discretion in the judge's refusal to allow Needles to withdraw his guilty plea because of the alleged "surprising" inaccuracy of the pre-sentence report. See United States v. Hughes, 325 F.2d 789, 792 (2d Cir.), cert. denied, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 178 (1964).

## II

We turn now to the alleged inaccuracies in the pre-sentence report and appellant's claim that because of them the sentence was improper. The issues impliedly raised are relatively new, are broad in their implications, and are largely unanswered, at least in this circuit. They are the logical outgrowth of the recent movement toward disclosing to convicted defendants or their counsel at least the substance of adverse information in pre-sentence reports. See, e. g., United States v. Bryant, 143 U.S. App.D.C. 53, 442 F.2d 775, cert. denied, 402 U.S. 932, 91 S.Ct. 1534, 28 L.Ed.2d 866 (1971); United States v. Fischer, 381 F.2d 509 (2d Cir. 1967), cert. denied, 390 U.S. 973, 88 S.Ct. 1064, 19 L. Ed.2d 1185 (1969). We do not deprecate this trend; only last month we again emphasized the desirability of the practice. United States v. Brown, 470 F.2d 285 (2d Cir. 1972). But here—as elsewhere in life—things are seldom all black or all white; improvements in procedure may create their own problems. If pre-sentence reports are to be disclosed, obviously some sensible way must be found to deal with a claim that a report is grievously wrong. See United States v. Malcolm, 432 F.2d 809 (2d Cir. 1970). In this case, just such a claim is

made; to discuss it adequately requires a precise description of what occurred in the district court.

On April 10, 1972, after defendant and his counsel had read the pre-sentence report and the trial judge had denied the motion to withdraw the guilty plea, defendant's counsel made an extensive plea for leniency. He asserted that all of the firearms included in the 30-count indictment had been in the possession of defendant legally for many years prior to the enactment of the Gun Control Act, that experimenting with firearms had been a lifelong hobby of defendant (according to the probation report, since he was 12), that he had been engaged in such experimentation on behalf of the United States Army and the "Winchester Firearms Company," and that since defendant's arrest two and one-half years before, he had suffered severe financial reverses and personal misfortune.

A lengthy colloquy then took place between the judge and defendant regarding the accuracy of the account in the pre-sentence report of defendant's firearms activities and his dealings with the federal agents which had led to his arrest. During this discussion, defendant repeated in substance what the report had attributed to him as "Defendant's Statement": that he was not engaged in large-scale, illicit sales of firearms; that the agents had not purchased from him—as recounted in the report—a number of handguns and silencers and a machine gun; that he was conducting research for the Army and the Olin-Winchester Gun Company; that he had only sold one gun to the agents at the request of a friend and that the sale was legal. However, while continuing to deny some assertions in the pre-sentence report, defendant admitted explicitly or in substance the following: On May 23,

---

3. It is true that later in the hearing defendant offered to show the judge a letter apparently suggesting other reasons for withdrawal of the plea. Appellant allegedly wrote the letter on March 14 while at sea but never mailed it. The

judge refused to consider the letter, certainly a reasonable decision since it had neither been mailed to him nor brought to his attention before the pre-sentence report was turned over.

1969, he met with some people and discussed the purchase of weapons. At that time, defendant displayed a semi-automatic rapid-firing M–1 rifle and demonstrated its operation by shooting it into the ocean. Defendant then sold the gun to one of the men for $350, and they made arrangements for another meeting. On May 28, 1969, they met defendant at his home, and he displayed to them "numerous hand guns, silencers and machine guns." Defendant had machinery in his garage for manufacturing silencers. The men came to the defendant's home again on June 5, 1969, arrested him, and seized all of the weapons and ammunition referred to in the report, including three machine guns, eight submachine guns, 14 automatic and semi-automatic rifles, ten pistols, and substantial quantities of ammunition. None of the weapons was registered and defendant had no license to manufacture ammunition; however, defendant maintained to the judge that he was merely "manufacturing prototypes" of silencers for demonstration to government weapon suppliers and that the ammunition was being used for test purposes alone.

This is the substance of the interchange in the court below on this key portion of the pre-sentence report. Although there were other alleged inaccuracies, which defendant also had an opportunity to bring to the court's attention,[4] we do not believe that they raise a serious issue. The question remains whether, as defendant puts it, he was improperly sentenced as a "gun dealer" upon a pre-sentence report which alleged in detail his gun-dealing activity "but which offered no evidence whatever to support the charge."[5]

A close examination of the foregoing reveals certain important facts. Defendant did meet with men who turned out to be undercover agents; they did buy a semi-automatic weapon from him for $350; he did test it for them by firing into the ocean; they returned several days later and defendant showed them numerous unregistered weapons; they came back the next week although in court defendant denied telling them that he would have three or four machine guns to sell them at that time; and on that date a sizeable number of weapons and a large amount of ammunition that ordinarily would have to be registered were seized in defendant's garage together with equipment defendant used to manufacture silencers. Thus, most of the key facts reported by the undercover agents were corroborated either by defendant's admissions or by real evidence, e. g., the weapons and ammunition seized.

Appellant claims that "there was *no* evidence at all to support"[6] the allegations in the pre-sentence report that he was "engaged in the widespread manufacture and sale" of firearms. This assertion is simply without merit in view of defendant's admissions and the undisputed facts set forth above. The real question is whether the judge was entitled to credit the statements of unidentified undercover agents over defendant's denials and explanations. It is conceded that "material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process." United States v. Malcolm, *supra*, 432 F.2d at 816. See United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1971); Townsend v. Burke, 334 U.S. 736, 68 S. Ct. 1252, 92 L.Ed. 1690 (1948). It does not follow, however, that an evidentiary hearing must be held whenever a defendant asserts the falsity of some statement in his pre-sentence report. The sentencing process is designed to encourage the court to take into account

---

4. E. g., appellant asserted that the report unfairly omitted or misrepresented the facts surrounding his marital status, and some of the details of his prior criminal record.

5. Appellant's br. at 24.

6. Id. at 25.

a broad array of factors bearing on the nature of both the crime and the defendant. See Williams v. New York, *supra,* 337 U.S. at 248–250, 69 S.Ct. 1079. As such it does not lend itself to the procedural formality of a trial; there is no definitive set of criteria and no required weight to be allocated to each consideration; many of the matters reviewed cannot readily be measured, quantified, proved or disproved; and some come from confidential sources. Hence it has not been required that each statement in a pre-sentence report be established or refuted by presentation of evidence. See id. at 250–251, 69 S.Ct. 1079; but see ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures § 5.4(b) (Approved Draft).

Nonetheless, since sentences should not be based upon misinformation, a defendant should not be denied an opportunity to state his version of the relevant facts, see United States v. Virga, 426 F. 2d 1320, 1323 (2d Cir. 1970), and in some circumstances the probation office or prosecution should be requested to provide substantiation of challenged information submitted to the judge. Likewise, in appropriate instances the defendant ought to be allowed to present evidence in the form of affidavits, documents, or even oral statements by knowledgeable persons on matters the court deems material to its decision on the severity of sentence. But this court has generally left the decision as to the appropriateness in any particular case of these procedures largely to the discretion of the sentencing judge. See United States v. Holder, 412 F.2d 212, 215 (2d Cir. 1969); United States v. Fischer, *supra,* 381 F.2d at 513.

■ Perhaps in a case where defendant denied everything and there was a chance that an entire incident had been manufactured or that serious charges in the pre-sentence report on which the

judge sought to rely were completely false, we would require further corroboration of the report even though the sentencing judge thought it unnecessary. But this is not such a case. It is true that credibility was clearly at issue in the single most damaging hearsay statement in the report—that defendant sold the agents "six hand guns, seven silencers and one machine gun for $1,250 under the impression that they wished to use these weapons in a series of crimes including major armed bank robberies." But on these facts—where, as set forth above, most of the agents' key assertions were corroborated by defendant's admissions, undisputed facts or real evidence —the court did all that was required. Cf. Williams v. Oklahoma, 358 U.S. 576, 584, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959). The judge gave defendant a chance in open court to present his side of the story.[7] Compare with United States v. Malcolm, *supra.* Having afforded defendant this opportunity, the judge did not have to believe him.

In urging reversal, appellant relies heavily on United States v. Weston, 448 F.2d 626 (9th Cir.), cert. denied, 404 U. S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1971). In that case, defendant was arrested on a charge of possession—as appellant here concedes—of "a small quantity of heroin." Weston's defense was a lack of knowledge that the "paper sack" in her possession contained heroin, but the jury did not believe her. After conviction, the judge indicated that the minimum mandatory sentence of five years would be appropriate. The Government disagreed, and asked that a pre-sentence report be prepared. After reading it, the judge decided that because the report identified defendant as the "chief supplier to the Western Washington area," the maximum 20-year prison term would be imposed. When counsel for defendant denied the truth of this allegation, the trial court gave defendant 120 days to prove that she

---

7. We note in passing that defendant apparently never requested additional time to prepare a rebuttal to the pre-sentence report, although he did move to withdraw his guilty plea and go to trial.

was not a major heroin supplier. On appeal, the Ninth Circuit vacated the sentence and remanded for resentencing, directing that, 448 F.2d at 634:

> On resentencing, the District Court may not rely upon the information contained in the presentence report unless it is amplified by information such as to be persuasive of the validity of the charge there made.

We believe that *Weston* is distinguishable from this case. The three-year sentence here was nowhere near the ten-year maximum the judge could have imposed. It suggests that the judge did not regard appellant as a major supplier of weapons to the underworld. Moreover, the judge did not place upon appellant a clear burden of disproving the contents of the pre-sentence report. Additionally, in contrast to the defendant in *Weston,* appellant here had a substantial criminal record going back to 1944; he had also apparently engaged in the bizarre conduct of "boobytrapping" his premises so that they were "mined against intrusions" by the probation officer. Finally, and most important, the content of the hearsay in the pre-sentence reports and the corroboration of it were radically different in the two cases. In *Weston,* the report speculated that the defendant travelled to Mexico or Arizona every two weeks to obtain $60,000 worth of heroin, upon which she earned $140,000 profit each time. As the court in *Weston* put it, id. at 633:

> [T]he factual basis for believing the charge was almost nil. It rested upon only two things: the opinion of unidentified personnel in the Bureau of Narcotics and Dangerous Drugs, and the unsworn statement of one agent that an informer had given him some information lending partial support to the charge.

In contrast, the damaging statements here about Needles were based upon alleged face-to-face contact and dealings with him, and were in large part corroborated by undisputed facts and admissions. In short, even if *Weston* were controlling authority in this circuit, we do not think it would require a remand here for resentencing.

Judgment affirmed.