**UNITED STATES of America,
Appellee,**

**v.**

**Ballard WILLIAMS, Defendant,
Appellant.**

**No. 73–1145.**

United States Court of Appeals,
First Circuit.

Argued April 1, 1974.

Decided May 28, 1974.

Rehearing Denied June 21, 1974.

Gerald F. Lucey, Boston Mass., with whom Moulton, Looney, Mazzone, Falk & Markham and Robert Y. Murray, Boston, Mass., were on brief, for appellant.

Alan R. Hoffman, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

After two days of trial, Ballard Williams pleaded guilty to conspiracy to distribute heroin and to possession with intent to distribute in violation of 21 U.S. C. §§ 841(a)(1), 846. The district court, which had reviewed a presentence report and heard argument from Williams and his counsel, sentenced Williams to 12 years in prison with a 5 year special parole term, three years less imprisonment than the government had recommended. Williams contends that the court erred in relying upon materially untrue and factually inaccurate statements in the report which conveyed the impression that he had played a major role in a large scale heroin distribution operation. He also questions the propriety of considering sentences imposed upon his codefendants.

The objectionable material is mainly contained in the part of the report entitled "official version of the offense":

"The records of the Bureau of Narcotics and Dangerous Drugs indicate that the codefendant, Clarence Hardy, was operating a large heroin distribution business in New York, New York, Washington, D.C. and Chicago, Illinois. It is alleged that Hardy was the leader of this large-scale operation and his principal 'lieutenants' in the operation were George Evans, Harold Bradshaw and the defendant, BALLARD WILLIAMS. WILLIAMS' participation in this operation consisted of cutting and bagging the heroin in New York and then delivering same to street distributors. In early December 1971, Hardy, Evans, WILLIAMS, and Wiley met in a home on 202nd Street, New York, where two suitcases were packed with money of various denominations. The four individuals then drove to Kennedy Airport where they boarded a plane for a flight to St. Thomas, Virgin Islands. The two black suitcases of money were carried on to the plane. On arriving in St. Thomas, all four defendants went to an office building where they met with a Polynesian-looking individual. Hardy turned over the two suitcases of money to this individual and the following day this person met with Hardy and gave him a folding suitbag, plaid in color. The four defendants then took a taxi to the airport and returned to New York with WILLIAMS carrying the plaid suitcase. This plaid suitcase contained four kilograms of heroin.

"In the latter part of December 1971, this heroin distribution operation was expanded to include the Boston and Lawrence areas due to the fact that there was 'heat' on the business in New York. Several trips were made by various individuals from New York to the Boston area at which time heroin, which had been prepared by various individuals including the defendant, WILLIAMS, in New York, was transported to Boston.

"On January 19, 1972, Agents Lavoie and Fencer of the Bureau of Nar-

cotics and Dangerous Drugs negotiated with the defendants, Wiley, Evans and WILLIAMS in a Lawrence, Massachusetts, restaurant regarding the purchase of quinine and the purchase of one-eighth kilogram of heroin. A photographic surveillance of this meeting was conducted by an agent of the Bureau of Narcotics and Dangerous Drugs.

"On January 30, 1972, the defendant, BALLARD WILLIAMS, transported several of Hardy's workers in Hardy's mobile camper from New York to Lawrence."

In the evaluative summary the probation officer commented, "Although Mr. Williams does not have a serious prior record, he is reported to have been one of the ringleaders in the present case . . . ." The report also describes the defendant's version of the offense. It states that Williams admits to sifting, bagging and delivering heroin but that he claims he came to Lawrence, Massachusetts only to secure a truck driver's license.

 Williams received a copy of the report five minutes before the sentencing hearing. At the hearing, he disputed the official version of the facts and asserted that the "ringleader" label was inaccurate. But he did not request an evidentiary hearing or continuance, nor announce what rebuttal evidence he wished to offer. To what extent, if any, the court relied upon the presentence report is unclear. But even if it took account of the disputed matter, we find no error. We add, however, that it would seem better practice to make presentence reports available more than five minutes before sentencing, thus both eliminating one source of post-sentence complaint and ensuring adequate opportunity to prepare any rebuttal.

Williams first contends that he was surprised by the material in the presentence report. But the latter adds virtually nothing to what was alleged in the indictment, what the prosecutor had said in his opening statement at the trial (and at the change of plea hearing), and what three witnesses had testified to.[1]

1. The conspiracy count was a compendium charging 17 others along with Williams. Among alleged overt acts were a suggestion to Williams that a trip to the Virgin Islands was necessary to procure heroin, Williams' packing money for the Caribbean purchase and subsequent flight to St. Thomas, his transporting several kilos of heroin to an apartment in Long Island, his presence in New York when heroin was cut and bundled, his discussion of heroin and quinine with federal agents in Lawrence, and a trip to Lawrence at which time he removed, along with others, heroin from 1500 bundles.

At the change of plea hearing, Williams admitted to bagging and delivering heroin, but denied that he had gone to the Virgin Islands or that he knew about any drugs being sold in Massachusetts.

However, at the trial which preceded the change of plea, a coconspirator named Wiley had testified to seeing Williams deliver loose bundles of heroin to one Danny, receiving in return large sums of money. Williams, Wiley testified, fetched him from the airport following his return from a heroin delivery in Illinois, was present when Hardy discussed going to the "Island" for heroin, carried a suitcase full of money to St. Thomas, and may have been the person carrying the suitcase with 4 kilos of heroin on the return trip to New York. Wiley said he observed Williams in New York cut and bag heroin. Moreover, Williams supplied him with drugs for the Lawrence operation. In Lawrence Williams was said to have accompanied Wiley and another coconspirator when they went to meet two whites interested in purchasing heroin; Williams had talked to one of them about the amount of quinine needed to cut an eighth of a kilogram. On the following day when the sale was consummated Williams was not present but he received half of the proceeds. Williams drove all the workers from New York to Lawrence and gave some heroin to one of them to sell in Washington. When he was about to return to New York, he remarked to Wiley that he had to fetch more heroin.

A government agent testified that he had observed his coagent speaking with Williams in Lawrence but did not hear the conversation. After his testimony Burton, another coconspirator, testified that on several occasions he was present in an apartment in Queens when Williams supplied heroin, bonita, and quinine, and ordered the workers to sift and bag the heroin. Williams also did some bagging. Williams usually paid Burton for the cutting work and once advised him

We say "virtually nothing" mainly because the characterizations of Williams as a "lieutenant" and "ringleader" were arguably new; but they stated only what the judge might have inferred from the earlier presentations. And the presentence report did not detail crimes beyond the one to which Williams had pleaded.[2] *Cf.* United States v. Weston, 448 F.2d 626 (9th Cir. 1971), cert. denied, 404 U.S. 1061, 92 S.Ct. 748, 30 L. Ed.2d 749 (1972).

Williams' second argument is that the court failed to provide "a meaningful chance to test the reliability of the information which is to be used in sentencing"[3] because there was no evidentiary hearing. But his counsel had earlier cross-examined two of the government's trial witnesses, and Williams' failure to request a hearing gave the court no reason to suspect that he wished such an opportunity.[4]

In sentencing, a court may rely upon responsible unsworn or out of court statements relative to the circumstances of the crime and to the defendant. See Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); United States v. Picard, 464 F.2d 215, 219 (1st Cir. 1972); United States v. Strauss, 443 F.2d 986, 990–991 (1st Cir.), cert. denied, 404 U.S. 851, 92 S.Ct. 88, 30 L.Ed. 2d 90 (1971). However, Williams points to United States v. Weston, *supra,* holding that the government has a duty to substantiate challenged information that is unsupported and difficult to rebut. In *Weston* the presentence report mentioned criminal conduct much more serious than that for which the defendant had been convicted. Moreover, the factual basis for believing the report was almost nil—"Unsworn evidence detailing otherwise unverified statements of a faceless informer that would not even support a search warrant." *Id.* at 631. In comparison the sentencing judge in the instant case had the sworn testimony of three witnesses. Since the facts and characterizations in the report were by no means unsupported the *Weston* holding is inapposite. *See* United States v. Needles, 472 F.2d 652 (2d Cir. 1973).

■■ The final issue raised is likewise without merit. The court mentioned two stiff sentences received by

2. Count VI of the indictment, dismissed after Williams pleaded guilty to conspiracy, charged him with the distribution of heroin in Lawrence on January 20, 1972. Nothing is said about this in the report. A discussion with federal agents on the 19th, mentioned in the report, is relevant to the conspiracy count.

he would be paid as soon as Williams collected money from the street. Burton was present when Williams was told he had to "bring the troops to Massachusetts" and was among the group which Williams drove there.

At the change of plea hearing the prosecutor informed the court that if the trial had proceeded, the government would have introduced authenticated photographs of Williams meeting with agents in Lawrence and the testimony of one agent that he had "asked Williams how much quinine would be needed to cut an eighth of a kilogram of heroin and what the cost would be, and Mr. Williams responded, '4 ounces, $50 an ounce.'"

3. American Bar Association Standards Relating to Sentencing Alternatives and Procedures § 4.1(a) (Approved Draft 1968).

4. Although Williams cites several cases for the proposition that effective rebuttal always requires an evidentiary hearing, they do not go beyond advocating disclosure of the presentence report and an opportunity to comment. *See* United States v. Fischer, 381 F.2d 509, 512 (2d Cir. 1967); United States v. Brown, 470 F.2d 285, 288 (2d Cir. 1972); United States v. Rosner, 485 F.2d 1213, 1230 (2d Cir. 1973). Opportunity for an evidentiary hearing is not invariably required whenever the defendant disputes a statement in his presentence report. *See, e. g., United States v. Espinoza,* 481 F.2d 553, 557–558 (5th Cir. 1973); United States v. Needles, 472 F.2d 652, 657–658 (2d Cir. 1973); Fernandez v. Meier, 432 F.2d 426, 427 (9th Cir. 1970). There may, of course, be circumstances where fairness requires one. *See, e. g. Haller v. Robbins,* 409 F.2d 857, 859–860 (1st Cir. 1969); United States ex rel. Brown v. Rundle, 417 F.2d 282, 285 (3d Cir. 1969).

codefendants, stating: "This shows, in my opinion, the extent of the ring . . . ." Williams was then sentenced to a lesser term of imprisonment than the codefendants who were mentioned by the court had received. Not only is it not reversible error to compare a contemplated sentence with that imposed upon others for a similar offense, but to do so is in the interests of fairness. *Cf.* Rodriquez v. United States, 394 F.2d 825 (5th Cir. 1968); Shepard v. United States, 257 F.2d 293 (6th Cir. 1958).

Affirmed.

■ Ballard Williams seeks a rehearing, contending that the cases cited in support of the proposition that the court did not err in considering the sentences received by his codefendants are inapposite. These two cases were cited in the government's brief; Williams had ample time to research the issue and present his arguments before an opinion was written. "It is implicit in the judicial process, as reflected in our Local Rule [15], that, barring a substantial excuse, the court will digest a case but once, and ruminates only in the loose sense of the word." Cross Baking Co., Inc. v. N. L. R. B., 453 F.2d 1346, 1351 (1st Cir. 1971). *See* also United States v. Doe, 455 F.2d 753, 762 (1st Cir. 1972). Overlooking the failure to explain why his arguments were not presented before, we reiterate that a sentencing court may take into account a wide variety of relevant factors, including the terms of imprisonment imposed upon others for similar offenses. It is not critical that the codefendants may have been sentenced by a different judge. The judge had been exposed to evidence and information concerning their activities, and we reject any rule which would forbid one sentencing judge from reflecting upon the sentences imposed by another for related or similar crimes. Neither in his brief on appeal nor in the petition for rehearing has Williams cited any cases to the contrary.

Rehearing is denied.