UNITED STATES of America, Appellee,

v.

**Raymond ROBIN, Appellant.**

**No. 951, Docket 76–1033.**

United States Court of Appeals, Second Circuit.

Argued April 20, 1976.

Decided Oct. 15, 1976.

Frederick T. Davis, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S.D.N.Y., Lawrence B. Pedowitz, New York City, of counsel), for appellee.

Joseph I. Stone, New York City, for appellant.

Before MOORE, TIMBERS and GURFEIN, Circuit Judges.

MOORE, Circuit Judge:

Raymond Robin, age forty-eight at the time of sentence, a former and then retired police officer and a licensed bailbondsman, appeals from a jail sentence of thirty (30) years plus fines and probation imposed upon him after his plea of guilty to a three count indictment (June 1974) against him, charging (1) conspiring to distribute narcotics in violation of Title 21, U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A), and (2) illegally possessing and distributing heroin on two separate occasions in March, 1974, in viola-

tion of Title 21, U.S.C. § 846. During the same month that appellant was indicted in the Federal District Court for the Southern District of New York, an indictment containing substantially the same accusations of narcotics violations was handed down in the New York State Courts.

After being fully warned of his constitutional rights, appellant waived arraignment on both indictments on the understanding that he would cooperate with the federal authorities (the Government) and perhaps reach an agreement on the disposition of his case. The federal indictment[1] was ordered sealed and remained so for almost a year. In May, 1975, it was ordered unsealed, apparently after the Government became dissatisfied with the type of cooperation offered by the appellant. Appellant was arraigned in June 1975 and released on bail after a plea of not guilty.

In November, appellant petitioned in the Federal District Court before District Judge Motley to withdraw his previously entered plea of not guilty and to plead guilty as charged. The guilty plea was accepted by the court over the objection of the Government, which wished to *nolle prosequi* the case.[2]

Appellant was sentenced on January 9, 1976, to fifteen years in prison on each count, with the sentences in Counts One and Two to run concurrently and the sentence on Count Three to run consecutively, totalling thirty (30) years' incarceration. Fines totalling $75,000 were also imposed, and a special three year special parole term was ordered to follow the thirty-year term of imprisonment.

Prior to sentencing, a State Assistant District Attorney (Cunningham), who had investigated State charges against appellant, submitted a letter to the Federal District Judge on the subject of the state investigation.[3] A copy was sent to appellant's privately-retained counsel.[4] On the morning of sentencing, January 9, 1976, appellant's counsel sought access to the presentence report[5] which had been ordered prepared after appellant's guilty plea. Counsel was permitted to see the report before the commencement of proceedings at 10:00 A.M., but was prohibited from taking it out of the judge's chambers and from showing it to his client.

The sentencing proceeding was marked by repeated disputes between the Government and the appellant on the underlying facts of the case. Appellant offered a tape and certain State Court exhibits to the Court to rebut the Government's version of the facts surrounding the case, but the Court refused to consider them.[6]

The Government's posture at sentencing was that appellant was a major heroin trafficker. The Government did not rest this

---

1. All references hereafter to the "indictment" are to the federal indictment, unless otherwise noted.

2. The Government apparently wished to permit prosecution of the appellant in State Court, proceedings which would be barred under state law if appellant were tried in federal court on charges relating to the same transactions or incidents which were the subject of the state court indictment.

3. The appellant maintains that the letter was dated December 9, 1975. The Government does not offer any conflicting date.

4. Appellant's trial counsel maintains that this letter was not received by his office until December 26, and that he did not see it until he returned from a vacation on January 6, 1976. Sentencing took place on January 9.

5. There is some confusion as to the precise hour when this occurred; however, the Government apparently does not dispute that defense counsel was permitted to examine the report only for a brief period of time immediately preceding the sentencing proceeding.

6. The grounds for this refusal are not clearly stated in the record.
 "MR. COHEN [Appellant's Counsel]: . . . I think your Honor ought to have this before you . . .
 THE COURT: What are you referring to?
 MR. COHEN: A tape that was made when this defendant was arrested, and an exhibit in the case held before Judge Denzer.
 THE COURT: What about it?
 MR. COHEN: It indicates that before there was any thought of this defendant being sentenced, that officers of the Drug Administration indicated that this defendant had a very small part in the drug traffic in New York.

conclusion on the charges to which appellant actually pleaded guilty,[7] but rather on extrinsic material which was summarized in the presentence report and the Cunningham letter, both of which served to outline what the Government "expected to prove" at trial. Although the District Judge disclaimed reliance on allegations of crimes not proven,[8] she concluded that she could receive the Government's version of the facts at the sentencing proceeding.[9] When the Judge pronounced sentence, she addressed appellant in part as follows:

"Mr. Robin, as I have indicated, the Court is convinced that your involvement in narcotics was on a major scale, and that this crime was committed after the very severe penalties enacted by the New York State Legislature went into effect which means that anybody involved in the narcotics traffic after that date is involved on a major scale because he is taking a major risk which you obviously were willing to take in view of the large sums of money involved in narcotics traffic." Tr. at 60.

Appellant filed a timely notice of appeal challenging the sentence. Following oral argument, we ordered that the presentence report be made part of the record on appeal.[10] Having examined the report as well as the rest of the record, we believe that serious error was committed in the course of the sentencing procedures which mandates vacatur of the sentence and resentencing before a different district judge.

MR. AMOROSA [Government]: Judge, I object to this procedure. We have not had an opportunity to look at this.
THE COURT: I have not seen it either.
MR. COHEN: I want your Honor to see what they said then. At the time he was arrested—this is a transcript of the Police Department of New York. This was produced at hearings held under the New York indictment.
MR. AMOROSA: To show what, this man's culpability? What does that have to do with our knowledge now with respect to that defendant?
MR. COHEN: I will show your Honor if that is the question.
MR. AMOROSA: Judge, this is in the nature of a summation, I ask before your Honor consider it that the government be allowed to look at it.
THE COURT: I think that is right, Mr. Cohen. I do not know what this document is, and I am not going to read it now, so you can take it back.
MR. COHEN: But I tell your Honor that that transcript indicates that this defendant was told at the time of his arrest that he was not being arrested for his part in the drug traffic.
THE COURT: That has to do with these charges?
MR. COHEN: It does, ma'am, absolutely. And it has to do with his posture within the drug traffic about which so much has been made in the memorandum.
MR. AMOROSA: I am compelled to ask your Honor to disregard this unless the government is given a full opportunity to explain it, assuming it is so.

THE COURT: Move on to something else, Mr. Cohen.
MR. COHEN: Of course, your Honor."
Transcript of proceedings of January 9, 1976 (hereinafter cited as "Tr."), at 8–10.

7. "THE COURT: It is your contention that he actually possessed the heroin, is that it?
MR. AMOROSA: A major trafficker in heroin.
THE COURT: That is shown by his plea to counts 2 and 3.
MR. AMOROSA: He did not admit he was a major dealer.
THE COURT: You don't think selling a half a kilo of heroin is major?
MR. AMOROSA: Judge, it is relative. We have people that have sold 130, 140 kilos of heroin, and we consider those violators. The defendant to have [sic] admitted in substance to selling or facilitating a kilo of heroin, and this defendant facilitated the sale of multikilos—
THE COURT: I cannot sentence him for matters he has not been convicted of.
MR. AMOROSA: We understand that, but we would like your Honor to take into consideration what we have to say also."
Tr. at 28.

8. Note 7, *supra*.

9. Tr. at 31.

10. *See, United States v. Delaney,* 142 U.S.App. D.C. 372, 442 F.2d 120, 122–3 (1971). Since the report was not disclosed to appellant personally, we have examined it *in camera* to preserve confidentiality. We express no opinion, however, respecting the district court's refusal to permit appellant to examine it.

Criminal sentences are not generally reviewable in this Circuit.[11] However, this Court does have the authority to review sentences under certain limited circumstances. Where there is a possibility[12] that sentence was imposed on the basis of false information or false assumptions concerning the defendant, an appeal will lie to this Court and the sentence will be vacated.

> "Misinformation or misunderstanding that is materially untrue regarding a prior criminal record, or material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process." *Townsend v. Burke*, 334 U.S. 736 at 740–1, 68 S.Ct. 1252, 92 L.Ed. 1690. *United States v. Malcolm*, 432 F.2d 809, 816 (2d Cir. 1970).

*Accord, United States v. Herndon*, 525 F.2d 208 (2d Cir. 1975); *United States v. Needles*, 472 F.2d 652, 657 (2d Cir. 1973).

Rule 32(a)(1) of the Federal Rules of Criminal Procedure (Rule) provides in pertinent part that:

> "Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment."

We have held that a defendant must be permitted to state his version of the facts to the court; where the possibility of reliance on misinformation is shown, this right must be extended to permit that presentation by the defendant which will enable the sentencing judge to grasp the relevant facts correctly. *United States v. Needles*, 472 F.2d 652, 658 (2d Cir. 1973); *see also, United States v. Rollerson*, 491 F.2d 1209, 1213 (5th Cir. 1974); *United States v. Powell*, 487 F.2d 325, 329 (4th Cir. 1974). In appropriate circumstances, this may mean that a defendant will be permitted to submit affidavits or documents,[13] supply oral statements,[14] or even participate in an evidentiary hearing;[15] alternatively, further corroboration of sentencing data may be required.[16] And while in such cases the procedure to be followed lies within the sound discretion of the sentencing judge, a court's failure to take appropriate steps to ensure the fairness and accuracy of the sentencing process must be held to be plain error and an abuse of that discretion.

Presentence reports, prepared by probation officers for use at sentencing,[17] often call for an exercise of the Court's discretion in this regard. The contents of the reports are not subject to the rules of evidence,[18]

---

11. *See, e. g., Counts v. United States*, 527 F.2d 542 (2d Cir. 1975); *McGee v. United States*, 462 F.2d 243, 248 (2d Cir. 1972).

12. Actual reliance need not be shown:

 "Here it is impossible to determine from the judge's remarks in imposing sentence . . . whether he was at least in part influenced by the [vacated] conviction under count 1 in setting sentence on counts 2 through 4. However, certain factors indicate that this is quite probable.

 \* \* \* \* \* \*

 [Accordingly], we have determined that it is not improbable that the initial sentencing process with respect to the valid counts was to some extent affected by the conviction on the far more serious count 1, which was illegally brought. To purge this possible taint after the fact . . . the order is vacated and the cause remanded." *McGee v. United States, supra*, at 462 F.2d 245–6, 247.

13. *United States v. Needles, supra*, at 472 F.2d 658.

14. *Ibid.*

15. In *United States v. Rosner*, 485 F.2d 1213, 1231 (2d Cir. 1973), this Court declined to order an evidentiary hearing upon resentencing but implicitly acknowledged the availability of such a procedure. *See, also Shelton v. United States*, 497 F.2d 156, 159 (5th Cir. 1974); *United States v. Gorden*, 495 F.2d 308, 310 (7th Cir. 1974).

16. *United States v. Needles, supra*, at 472 F.2d 658.

17. *See,* F.R.Crim.P. 32(c).

18. *See, Gregg v. United States*, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969), *reh. denied*, 395 U.S. 917, 89 S.Ct. 1738, 23 L.Ed.2d 232; *Farrow v. United States*, 373 F.Supp. 113 (S.D. Cal.1974).

and experience has shown that they are heavily relied upon by sentencing judges.[19] Accuracy is therefore of prime concern. Reflecting this concern, defendants have been given increasingly greater access [20] to presentence reports in order to point out inaccuracies. Rule 32(c)(3)(A) mandates disclosure of the report—save for any sentence recommendation—upon request of the defendant; disclosure may be withheld only if rehabilitation of the defendant will be thereby jeopardized, or harm is likely to result to the defendant or others.

To enable a defendant to effectively present his version of the facts to the court by pointing out inaccuracies in the presentence report, we have held that a defendant must be given adequate time to prepare and present a rebuttal to information which he contests.[21] In *United States v. Rosner*, 485 F.2d 1213 (2d Cir. 1973), defense counsel requested (and was shown) a copy of the presentence report on the morning of sentencing. At the same time, the court also made available to counsel a prosecutor's memorandum prepared in aid of sentencing. We held that the defendant lacked adequate opportunity to prepare a rebuttal and that defense counsel's well-meant attempts to rebut at sentencing could not cure this defect.

"[The] morning [of sentencing] when . . . chief defense counsel . . . was shown the prosecutor's memorandum, he asked for an adjournment so that he could have 'an opportunity to answer them.' Although defense counsel had had no time to review or possibly even to absorb seventeen separate incidents hitherto unfamiliar to him, the request for an adjournment of sentence was denied. The Assistant United States Attorney then made a strong plea that 'Mr. Rosner

be dealt with in the harshest possible terms'."

\* \* \* \* \* \*

"Here the defendant did have able and conscientious counsel, but unless counsel was given adequate opportunity to correct any misinformation in the prosecutor's memorandum, we doubt that his spontaneous comment before sentence was adequate to afford the defendant his due." 485 F.2d at 1229, 1230 (quotation marks in original).

Much the same can be said in the present case with respect to the presentence report itself. The Government and prosecuting state authorities were urging that appellant be treated as harshly as the law permits,[22] largely on the basis of alleged information which was extrinsic to appellant's guilty plea. A memorandum in letter form from Cunningham had been submitted to the sentencing court, and defense counsel unsuccessfully sought an adjournment of sentencing in order to prepare a rebuttal.[23] On the day of sentencing, appellant's counsel was given the presentence report. We have examined this report *in camera,* and need only say that it contains a lengthy and detailed recital of activities by the appellant and others, in addition to extensive information about appellant's personal life. It would be virtually impossible for counsel to have read the report carefully within a very short space of time, let alone to have digested it or prepared a satisfactory rebuttal.

The importance of the presentence report and the Cunningham memorandum in this particular case cannot be overemphasized in view of appellant's plea of guilty. The absence of a trial prevented the judge from acquiring that familiarity with the case and the defendant which frequently aids immeasurably at sentencing. Moreover, the judge was also deprived of the benefit of

19. *See, United States v. Malcolm, supra,* at 432 F.2d 818.

20. *Compare, e. g.,* F.R.Crim.P. 32(c)(3) as amended in 1966, and as amended in 1974.

21. *United States v. Rosner, supra* at 485 F.2d 1230; *United States v. Hermann, supra,* 2 Cir.,

at 524 F.2d 1103; *Shelton v. United States, supra* at 497 F.2d 159–160.

22. *See, e. g.,* Tr. at 41.

23. Affidavit of defendant's trial counsel, Mr. Cohen, submitted as appellant's reply brief.

defense counsel's cross-examination of witnesses and presentation of evidence at trial, both of which are invaluable means of correcting inaccuracies that may later be propounded at sentencing.[24]

Without the benefit of a trial, the sentencing judge necessarily leaned heavily on the presentence report and the Cunningham letter as sources of information concerning the appellant's behavior and alleged criminal acts. This is borne out by the court's conclusions concerning appellant's major involvement in narcotics trafficking[25] and the profits which the court believed he derived therefrom. Appellant's blanket denials of financial affluence were given no consideration, and his counsel's similar denials and affirmative offer of proof regarding appellant's degree of involvement[26] with narcotics were similarly met by a summary rejection.[27] Throughout the sentencing proceeding, appellant's counsel vainly contested the veracity of the overall picture of appellant's involvement as chronicled in the presentence report and Cunningham letter.

■ There can be no question that the time allotted to appellant's counsel was insufficient to permit adequate study of the presentence report, particularly in view of the fact that counsel was not permitted to show the report to his client. Had the sentencing been preceded by a trial on the merits, this error might have been waived by counsel's failure to seek an adjournment of sentencing.[28] But such is not the case here, and we believe that the repeated objections of appellant at sentencing to every major allegation raised by the court, the Government, and the State prosecutors (who appeared at the sentencing proceeding and actually addressed the court), should have alerted the sentencing judge to the necessity of permitting a further and more capable explication by the appellant. This is especially true in view of the harsh sentence obviously contemplated by the court, a factor which should have made the court still more sensitive to the need for a careful inquiry into the accuracy of the information before it.[29] The Court's failure to address any serious consideration to appellant's objections and offer of proof was, in the special circumstances of this case, an abuse of discretion amounting to plain error.

■ The court presumably was in possession of the presentence report at the time that appellant's counsel requested an adjournment on the basis of the Cunningham letter. Appellant maintains that the court refused to discuss the matter with his counsel and instead denied the request summarily.[30] In view of the contents of the report, and the unique importance to the sentencing process of both the letter and the report, we believe that this summary denial was reversible error. Appellant was entitled to reasonable preparation time to rebut

---

**24.** "Williams' second argument is that the court failed to provide 'a meaningful chance to test the reliability of the information which is to be used in sentencing' because there was no evidentiary hearing. But his counsel had earlier cross-examined two of the government's trial witnesses, and Williams' failure to request a hearing gave the court no reason to suspect that he wished such an opportunity." *United States v. Williams,* 499 F.2d 52, 55 (1st Cir. 1974) (footnotes omitted).

"Regarding the allegation that the unexpected sentence resulted from erroneous information in the presentence report, the *Trial Court's findings of fact affirmatively establish* that the District Court was 'well aware before sentencing of the errors in the presentence investigation report, and the Court knew that the defendant was not a "kingpin" in the narcotics trade.' Any suggestion that the sentence was based on incorrect facts is therefore clearly rebutted." *United States v. Battle,* 467 F.2d 569, 570 (5th Cir. 1972) (emphasis supplied).

**25.** *See* this opinion at 777–778, *supra.*

**26.** Note 7, *supra.*

**27.** *Ibid.*

**28.** *See, United States v. Green,* 483 F.2d 469, 471 (10th Cir. 1973).

**29.** *United States v. Brown, supra,* at 470 F.2d 288. *Compare, United States v. Murphy,* 497 F.2d 126, 128 (5th Cir. 1974); *United States v. Rollerson,* 491 F.2d 1209, 1213 (5th Cir. 1974). *See, also, United States v. Needles, supra,* at 472 F.2d 658–659.

**30.** This is not denied by the Government.

material contained in the letter. There is no indication that appellant's request was other than reasonable; on the contrary, the facts support the reasonableness of the request.

The conclusion is inescapable that the appellant was severely impaired at sentencing by inadequate preparation that was wholly beyond his control. Moreover, it is clear from appellant's repeated and unequivocal objections (both personally and through counsel) to the veracity of the sentencing data that a serious question respecting accuracy was raised. For these reasons the sentence must be vacated, and a remand for resentencing ordered. Following the preferred practice in such cases, resentencing will be before a different judge.[31]

■ Since the sentence imposed was within the statutory maximum, we cannot entertain a serious question as to its legality.[32] However, it is not inappropriate for this Court to note, with some concern, the particular severity of the sentence which was imposed in this case.[33] The imposition of a thirty-year prison sentence on this now forty-nine year old first offender is tantamount to a life sentence. Recognizing that substantial disparities in sentences exist and that they are of serious concern to those involved in the judicial system,[34] we are especially concerned when a harsh sentence is imposed upon so questionable a foundation as existed in this case.

Vacated and remanded.

**31.** *United States v. Rosner, supra,* at 485 F.2d 1231; *United States v. Brown,* 470 F.2d 285, 288–9 (2d Cir. 1972).

**32.** *United States v. Tramunti,* 513 F.2d 1087, 1120 (2d Cir. 1975); *United States v. Driscoll, supra*; *McGee v. United States, supra.*

**33.** *See United States v. Driscoll, supra,* at 496 F.2d 254; *United States v. Moody,* 371 F.2d 688, 693–694 (6th Cir. 1967).

**34.** *See* Partridge, *The Second Circuit Sentencing Study* (1974) at A–18; Orland, *Justice in Sentencing* (1974) at 157–198.

**1.** The sentence hearing began at 10 A.M. on January 9, 1976. It continued until the noon recess. It resumed at 2 P.M. and continued until sentence was imposed later in the afternoon.

TIMBERS, Circuit Judge (dissenting):

Sentence review is none of our appellate business.

Today's majority decision is the most unwarranted interference with a conscientious district judge's imposition of sentence within the limits prescribed by Congress that I have seen in more than sixteen years on the federal bench.

Raymond Robin—whose underworld code name is "Railroad" or "RR"—was caught red-handed selling one-half kilograms of heroin on two occasions during a six day period in March 1974. A retired New York City police officer and bail bondsman, he pleaded guilty to three counts of violation of the federal narcotics laws. He has never said or suggested that he did not commit the offenses. He has never indicated a scintilla of remorse. After a day-long sentence hearing,[1] he was sentenced by Judge Motley to two-thirds of the maximum prison penalty provided by Congress; was ordered to pay a $75,000 committed fine—the maximum; and was ordered to serve a three year special parole term upon his release from prison.

The majority candidly concedes that it does not like "the particular severity of the sentence which was imposed in this case." 545 F.2d at 782. Reaching deep down into its bag for a rationalization to justify its vacating a sentence imposed within statutory limits,[2] the majority comes up with the assertion, as the basis for its decision, that

Both sides were given a full opportunity to be heard. There was no curtailment of the presentation by either side. Both Robin and his attorney were heard at length. On the government side, in addition to the Assistant United States Attorney, the judge briefly heard from David F. Cunningham, Esq. and Sterling Johnson, Esq., the two prosecutors who had been in charge of the New York State prosecution of Robin for the same narcotics offenses for which he was indicted in the federal court.

**2.** The majority, although giving lip service to it, then proceeds totally to ignore the rule which is deeply rooted in public policy and has been uniformly adhered to by the Supreme Court and ours that "a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review." *United States v. Tucker,* 404 U.S. 443, 447 (1972); *accord, Dorszynski v. United States,* 418 U.S. 424, 441 (1974); *Gore v. United States,* 357 U.S. 386,

the defense was not given sufficient time to examine the presentence report.

The record is squarely to the contrary.

In the first place, no objection was made before Judge Motley of insufficient time to examine the *presentence report* and no request for an adjournment of sentencing was made for the purpose of examining it.[3] Second, the presentence report *was made available* in its entirety to Robin's attorney.[4] Third, the presentence report *was used* extensively by Robin's attorney in his plea to Judge Motley on behalf of his client during the lengthy sentence hearing.[5] Fourth, Judge Motley made it crystal clear at the outset of the hearing and throughout that in imposing sentence she would confine herself to the charges in the indictment to which Robin had pleaded guilty; specifically, the judge repeatedly stated that she *would not take into consideration other matters set forth in the presentence report,* including "other crimes which may have been committed by the defendant . . . . If he is guilty of some other crimes, they are not before me."[6] To this, defense counsel responded, "I'm glad to hear your

397 (1958); *United States v. Wiley,* 519 F.2d 1348, 1351 (2 Cir. 1975); *United States v. Tramunti,* 513 F.2d 1087, 1120 (2 Cir.), *cert. denied,* 423 U.S. 832 (1975); *McGee v. United States,* 462 F.2d 243, 248 (2 Cir. 1972).

**3.** Indeed the majority states only that "defense counsel unsuccessfully sought an adjournment of sentencing in order to prepare a rebuttal" to the Cunningham letter.

Even this request for an adjournment does not appear in the record certified to this Court. It appears only in an affidavit by Robin's district court counsel attached to Robin's reply brief in which he states that "My purpose is to make clear herein that I did not have enough time and opportunity to adequately meet the many conclusiory (sic) and hearsay statements *contained in Mr. Cunningham's letter.*" (emphasis added). Counsel never complained of insufficient time to examine the presentence report.

As for the Cunningham letter, Robin's counsel concedes that it was received in his office two weeks before the date of sentencing.

And of course Cunningham himself appeared at the sentence hearing where he was available for questioning by defense counsel who chose not to question him.

**4.** The repeated references in the majority opinion to the fact that the presentence report was given to defense counsel but not "to his client", 545 F.2d at 777, 781, appear to suggest that there was something wrong with that procedure. Amended Fed.R.Crim.P. 32(c)(3), however, which governs disclosure of the presentence report and which became effective on December 1, 1975, just one month before the instant sentence was imposed, expressly states no less than five times that the presentence report shall be made available to "the defendant *or* his counsel". (emphasis added).

**5.** With respect to defense counsel's use of the presentence report at the sentence hearing, the record shows the following:

"MR. COHEN [Robin's attorney]: If your Honor please, to begin with I would like to address myself to some of the matters in the presentence report. I had an opportunity to see that this morning (Tr. 2–3).

\* \* \*

On an individual basis the presentence report has shown you this man at the age of seventeen and not under any compulsion but voluntarily enlisted in the United States Navy. On his eighteenth birthday he was in the fields of the Philippines, and served his country throughout that time with honor, and received an honorable discharge.

Thereafter, as the probation report shows, your Honor, the man was a policeman and worked for the city and state of New York. Despite various suggestions again in the presentence memorandum, your Honor will note that the probation officer from the official record has indicated and tells your Honor and informs your Honor that during his years of service not once but twice he performed meritoriously enough for commendation. We are dealing with that kind of man in public service. I am not going to detail the family background. Your Honor has all of that, but that is the kind of man we are talking about. A man who has never been convicted of anything, not even getting a traffic ticket." (Tr. 11).

Of course defense counsel understandably made selective use of the presentence report. But that itself belies the assertion of the majority that "the time allotted to appellant's counsel was insufficient to permit adequate study of the presentence report . . . ." 545 F.2d 781. Appellant's counsel never, at any time, in any court, made any such claim.

**6.** Judge Motley's ruling that in imposing sentence she would confine herself to the charges

Honor say that because your Honor has articulated the rule on sentencing. . . . " Finally, the claim that the defense was not given sufficient time to examine the pre-sentence report—the ground for the majority's decision vacating sentence—aside from never having been raised in the district court, *likewise has not been raised by appellant on appeal either in his briefs or in oral argument.*

In short, the ground upon which the majority's decision is based must be viewed precisely for what it is: a ground never claimed by appellant or his counsel in the district court or on appeal; a ground totally devoid of any support in the record; but a ground nevertheless relied on by the majority as a vehicle not only for expressing its "concern" for "the particular severity of the sentence" but for vacating it.

If this were not enough to compel me to dissent, there is one other matter. Without the slightest basis in the record to justify it, the majority has directed that "resentencing will be before a different judge". 545 F.2d at 782. The majority characterizes this as "the preferred practice in such cases". *Id.* What is "preferred" of course is a subjective judgment. I had supposed that the extraordinary remedy of directing that proceedings on remand take place before another judge should be reserved for the extraordinary case. In my view, this is not such a case. In the context of imposi-tion of sentence, one would expect, before ordering the extraordinary remedy of re-sentencing before a different judge, that such order be based upon a showing in the record of such bias or prejudice against the defendant as to render it difficult or impossible for the judge fairly and impartially to perform the duty which she took the oath more than ten years ago to perform. There is not a scintilla of a showing in this record of any such bias or prejudice, and the majority points to none.

The conclusion therefore is inescapable that the direction that appellant be resentenced before a different judge further confirms my belief stated above that the true reason for the majority's decision vacating this sentence is that the majority simply does not like "the particular severity of the sentence which was imposed". With deference, that strikes me as precisely the sort of sentence review which is none of our appellate business.

I therefore respectfully but most emphatically dissent.

in the indictment to which Robin had pleaded guilty was a ruling which of course was more favorable to him than that to which he was entitled. We have held that "[a] sentencing judge's access to information should be almost completely unfettered in order that he may 'acquire a thorough acquaintance with the character and history of the man before [him].' *United States v. Doyle,* 348 F.2d 715, 721 (2 Cir.) (Friendly, J.), *cert. denied,* 382 U.S. 843 (1965)." *United States v. Schipani,* 435 F.2d 26, 27 (2 Cir. 1970), *cert. denied,* 401 U.S. 983 (1971). A sentencing court "may and should consider matters that would not be admissible at a trial," *United States v. Sweig,* 454 F.2d 181, 183–84 (2 Cir. 1972), including hearsay, *Williams v. Oklahoma,* 358 U.S. 576 (1959); *Williams v. New York,* 337 U.S. 241 (1949); prior crimes of which the defendant has not been convicted, *United States v. Cifarelli,* 401 F.2d 512, 514 (2 Cir.), *cert. denied,* 393 U.S. 987 (1968); and charges dismissed without a determination on the merits, *United States v. Doyle, supra.* See generally *United States v. Hendrix,* 505 F.2d 1233, 1235–36 (2 Cir. 1974), *cert. denied,* 423 U.S. 897 (1975). See Judge Hays' summary of some of these authorities and the rationale for the rule that such matters may and should be considered by the sentencing judge in the exercise of his "very broad discretion in imposing any sentence within the statutory limits." *United States v. Sweig, supra,* 454 F.2d at 183–84.