UNITED STATES of America,
Appellee,

v.

Marie WILEY and Nathaniel
James, Appellants.

Nos. 1100, 1135, Dockets 75–1082,
75–1193.

United States Court of Appeals,
Second Circuit.

Argued June 5, 1975.

Decided July 29, 1975.

Howard L. Jacobs, New York City, for appellant Wiley.

Sheila Ginsberg, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for appellant James.

Jo Ann Harris, Asst. U. S. Atty., Southern District of New York (Paul J. Curran, U. S. Atty., and John D. Gordan, III, Asst. U. S. Atty., Southern District of New York, on the brief), for appellee.

Before SMITH, ANDERSON and OAKES, Circuit Judges.

PER CURIAM:

Following a jury trial Marie Wiley and Nathaniel James were each convicted on a single count[1] of conspiring to distribute and to possess with intent to distribute, cocaine, in violation of 21 U.S.C. § 846. Wiley was sentenced on January 22, 1975 to seven years imprisonment and James was sentenced on March 13, 1975 to three years imprisonment, each sentence to be followed by three years special parole. This appeal followed.

Both Wiley and James attack the sufficiency of the evidence against them.

Wiley argues that there was insufficient evidence of her participation in the conspiracy to warrant submitting the case to the jury. We disagree.

■ In determining whether to submit a criminal case to a jury, the court must determine whether upon the evidence taken as a whole, a reasonable mind might fairly conclude that the defendant was guilty beyond a reasonable doubt. *United States v. Taylor*, 464 F.2d 240 (2 Cir. 1972). This standard was met. The evidence revealed that, although Wiley did not personally handle either the cocaine or the money used to purchase it, she acted as the intermediary for co-conspirator Charles Clark[2] in the first sale on October 17, 1973 by substituting for Clark in a prearranged meeting at the Blue Rose Bar with Detective Dorothy Johnson of the New York City police. She initially told Johnson that she would assist her in purchasing an ounce of cocaine; and then brought Clark to Johnson when Johnson insisted on dealing directly with Clark. Wiley let Clark and Johnson use her pink Continental car in driving to various places in order that Clark and Johnson might complete the transaction. Wiley was also present on October 24, 1973 when Johnson purchased another ounce of cocaine from Clark in Johnson's car. The foregoing amply supports the conclusion that Wiley was not a mere casual facilitator, but rather

---

1. On May 17, 1974, Wiley, James, and one Charles Clark were charged in a four count indictment with conspiracy to distribute and to possess with intent to distribute, cocaine, in violation of 21 U.S.C. § 846 (Count 1); with the wilful and knowing distribution and possession with intent to distribute cocaine on or about October 17, 1973, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2 (Count 2); with the wilful and knowing distribution and possession with intent to distribute cocaine on or about October 24, 1973, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2 (Count 3); and Clark and James, but not Wiley, were charged with the wilful and knowing distribution and possession with intent to distribute cocaine on October 31, 1973, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2 (Count 4).

Because Clark was then a fugitive, trial commenced on November 25, 1974 against Wiley and James. At the close of the Government's case, the district court granted James' motion pursuant to Fed.R.Crim.P. 29(a) for a judgment of acquittal with respect to Counts Two and Three, and reserved decision on a similar motion on behalf of Wiley with respect to Count Two. Wiley and James offered no evidence, and the remaining counts were submitted to the jury. On November 27, 1974, the jury found Wiley guilty on Count One and acquitted her on Counts Two and Three. James was found guilty on Count One and acquitted on Count Four.

Charles Clark remained a fugitive until December 9, 1974. On March 14, 1975 he pleaded guilty to Count One of the Indictment.

2. See note 1, *supra*.

an active participant in the conspiracy. See *United States v. Terrell*, 474 F.2d 872, 875–76 (2 Cir. 1973). Compare *United States v. Steward*, 451 F.2d 1203, 1206–07 (2 Cir. 1971).

■ James does not contest the sufficiency of the evidence taken as a whole, but rather contends that the non-hearsay evidence of his participation in the conspiracy was insufficient to permit the admission against him of certain hearsay statements made by co-conspirator Clark. The first statement occurred on the evening of October 31, 1973, when Clark told Johnson in James' presence, while the three waited for the contact from their source of cocaine, that James was Clark's trusted friend and "tester" and that James would handle Clark's narcotics business when Clark was out of town. The second statement was made by Clark later that same evening when he told Johnson, again in James' presence, that if she saw him leave the Casbah and get into a taxi, she should drive to the corner of Broadway and 101st Street and James would tell her where to proceed from there.

This court held in *United States v. Geaney*, 417 F.2d 1116 (2 Cir. 1969), *cert. denied*, 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970), that the trial judge must determine whether the defendant's participation in a conspiracy has been established by "a fair preponderance of the [independent non-hearsay] evidence" before hearsay statements made by an alleged co-conspirator may properly be considered against the defendant. The non-hearsay evidence of James' involvement in the conspiracy was more than sufficient in this case to satisfy *Geaney*.

James came with Clark to his rendezvous with Johnson at the Blue Rose Bar on October 31, 1973;[3] he also accompanied Clark on an unsuccessful foray into a West Side bar to obtain Johnson's "package"; participated in a conversation between Clark and an unknown man at the Blue Rose Bar which triggered a second trip to procure the cocaine; and was present when Clark delivered the cocaine to Johnson in return for $3,330.00.

His involvement in the conspiracy was further revealed by Clark's instructions to Johnson to follow James' directions if she saw Clark exit from the Casbah and leave in a taxi, a statement which it was reasonable to infer James heard and which was properly part of the non-hearsay proof both because it was made in James' presence and was not repudiated,[4] *United States v. Geaney, supra*, at 1118, 1120, and because it was a verbal act. *United States v. D'Amato*, 493 F.2d 359, 363–64 (2 Cir.), *cert. denied*, 419 U.S. 826, 95 S.Ct. 43, 42 L.Ed.2d 50 (1974); *United States v. Tramunti*, 513 F.2d 1087, 1109 (2 Cir. 1975). The foregoing furnished ample basis for "inferring that [James] knew about the enterprise and intended to participate in it or to make it succeed." *United States v. Cirillo*, 499 F.2d 872, 883 (2 Cir. 1974), *cert. denied*, 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974).

■ James also contends that *Geaney's* "fair preponderance of the evidence independent" standard should be replaced by a "proof beyond a reasonable doubt" test, or the quantum of independent evidence needed to submit the case to the jury, in light of *United States v.*

---

3. Although there was no evidence of James' participation in the conspiracy until the third transaction between Clark and Detective Johnson on October 31, 1973, his absence from the scene at the time of the first two sales does not make him any less a member of the conspiracy. See *United States v. Torres*, 503 F.2d 1120, 1124, n. 2 (2 Cir. 1974).

4. James cites *United States v. Hale*, —— U.S. ——, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), for the proposition that "silence is so ambiguous that it is of little probative force" except where it "persists in the face of accusation." Unlike the instant case, however, Hale was silent after being advised by the police of his right to remain so, and the Supreme Court's remarks were intended as an explanation of its holding that "If the Government fails to establish a threshold inconsistency between silence at the police station and later exculpatory testimony at trial, proof of silence lacks any significant probative value and must therefore be excluded." *Id.* at ——, 95 S.Ct. at 2136.

*Nixon*, 418 U.S. 683, 701 n. 14, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).[5] The statement contained in footnote 14 of *Nixon* is pure dictum, however, gratuitously offered to illuminate one of the bases upon which the subpoenaed material in that case could properly be called "evidentiary." Moreover, certiorari has been denied subsequent to the *Nixon* decision in several Second Circuit cases where the "fair preponderance" test was applied to sustain the convictions of some of the defendants, *United States v. Cirillo, supra* ; *United States v. D'Amato, supra* ; *United Stats v. Santana*, 503 F.2d 710, 713 (2 Cir.), *cert. denied*, 419 U.S. 1053, 95 S.Ct. 632, 42 L.Ed.2d 649 (1974), and the *Geaney* test continues to be applied in this Circuit. See, *e. g., United States v. Gerry*, 515 F.2d 130, at 142 (2 Cir. 1975); *United States v. Miley*, 513 F.2d 1191, at 1208, n. 12 (2 Cir. 1975); *United States v. Tramunti, supra*, at 1109. Although counsel for the appellant James made a very good presentation of this claim, we remain of the opinion that the standard established in *Geaney* is correct and that this court should continue to adhere to the "fair preponderance" rule.

■ The appellant Wiley has attacked the length and nature of her sentence, but there are no circumstances in connection with it which would justify any consideration of it by this court. It was well within the statutory limits and was fixed within the sound judgment of the district court.

■ The other issue raised by James is not of sufficient merit to call for extended discussion.[6]

The judgment of the district court as to each defendant is affirmed.

---

**5.** Footnote 14 reads:

"As a preliminary matter, there must be substantial, independent evidence of the conspiracy, at least enough to take the question to the jury. *United States v. Vaught*, 485 F.2d 320, 323 (CA 4 1973); *United States v. Hoffa*, 349 F.2d 20, 41–42 (CA 6 1965), aff'd on other grounds, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *United States v. Santos*, 385 F.2d 43, 45 (CA 7 1967), *cert. denied*, 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed.2d 1148 (1968); *United States v. Morton*, 483 F.2d 573, 576 (CA 8 1973); *United States v. Spanos*, 462 F.2d 1012, 1014 (CA 9 1972); *Carbo v. United States*, 314 F.2d 718, 737 (CA 9 1963), *cert. denied*, 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964). Whether the standard has been satisfied is a question of admissibility of evidence to be decided by the trial judge."

The relevant textual portion of *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), states that "Declarations by one defendant may also be admissible against other defendants upon a sufficient showing, by independent evidence, of a conspiracy among one or more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy."

**6.** James also contends that the trial court committed reversible error when it failed in charg-

ing the jury to correct any possible notion the jury may have had that the court had already decided that the Government had proved James' membership in an unlawful conspiracy beyond a reasonable doubt. James cites *United States v. Barry*, 518 F.2d 342, at 348 (2 Cir. 1975), in support of his contention, but that case concerned a failure by the district court to instruct the jury in accordance with a specific statutory mandate. The omission of the required instruction was plain error as a matter of law. By contrast, the trial court's charge in the instant suit, taken as a whole, fully and correctly instructed the jury that it was their duty to determine whether or not the Government had proved beyond a reasonable doubt both the existence of an unlawful conspiracy, and James' participation in it. The remote possibility that the jury may have misunderstood the trial court's cautionary instructions at the time Clark's hearsay statements were admitted did not constitute plain error. Therefore, to the extent that the defendant James had a right to have any clarification made, it was waived by his failure to object at any time to the cautionary instructions, or to request a charge on the matter or to object to the charge given to the jury. *United States v. Pinto*, 503 F.2d 718, 723–724 (2 Cir. 1974). Moreover, the question was raised for the first time on this appeal.