UNITED STATES of America, Plaintiff-Appellee,

v.

Robert Scott JACOBSON, Defendant-Appellant.

No. 77–1422.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted April 21, 1978.

Decided June 9, 1978.

Rehearing Denied June 30, 1978.

Edward W. Nottingham, Asst. U. S. Atty., Denver, Colo., (Joseph F. Dolan, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Joseph Shemaria, Los Angeles, Cal., for defendant-appellant.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The above named defendant appeals from a judgment of conviction based on 21 U.S.C. §§ 846 and 841(a)(1) (1970). The charge was conspiracy to distribute methamphetamines. Codefendants were James Love, Nathan King and David McCallum. They also were charged with conspiracy. However, all three of them entered pleas of guilty to the charge of distribution of methamphetamines. The sentence of defendant was one and one-half years imprisonment together with a mandatory two-year special parole term.

On November 28, 1975, Agent Keith Clements of the Drug Enforcement Administration made a purchase of methamphetamines from James Love and Love's girlfriend, Rosalyn Ward, for $1,600. On a later date, Clements met James Love, who told him that his primary source of amphetamines was a man named Jake from Los Angeles.

On January 9, 1976, Clements had a conversation with Love concerning the purchase of 50,000 amphetamine tablets. Love said that although he could not supply that many at that time, he would inquire and see if someone else could provide them.

On January 27, 1976, Clements purchased 20,000 of the tablets from Love for $1,700. Agent Roger Knapp of the Drug Enforcement Administration testified that on January 26, 1976, he purchased amphetamines from King. King indicated to Knapp that

he had a partner named "Scott" on the West Coast.

Following his plea of guilty and the grant of immunity, David McCallum gave testimony which directly inculpated the appellant. In early 1976, he traveled from Los Angeles to Denver bringing with him one-half million amphetamine pills which had been supplied by appellant. He also testified that he, together with appellant and Nancy Parker, rearranged the packaging of the pills and placed them in a suitcase. Jacobson instructed him, McCallum, to meet James Love and Nathan King in Colorado. Also, he was to collect the money and bring it back. When he reached Colorado, McCallum telephoned Jacobson and was told that Nathan King and James Love would be meeting him at the Hilton Hotel near the airport. He transported the suitcases with the amphetamines to Big Elk Meadows, where Love, King and their girlfriends lived. However, Love and King did not pay the full amount at the time, so McCallum waited a day and finally received part of the money. He then returned to Los Angeles.

Soon thereafter, Jacobson, McCallum, Nancy Parker and Ted Tarbot, a friend of Jacobson's, flew to Colorado to collect the rest of the money. King gave Jacobson some of the money. Jacobson returned to Big Elk Meadows and talked to Hurteau and Patricia Wallis about the remainder of the money, Jacobson saying that he wanted his money or his "beans." On that occasion McCallum and Tarbot searched for the amphetamines and were unable to find them. As they left the residence, McCallum and Jacobson met Love and King on the road and King gave Jacobson some more money. Later in the month, McCallum saw King in Los Angeles in the company of Jacobson.

McCallum's testimony was corroborated by Patricia Hurteau. She had been present the first time that McCallum had brought pills from Los Angeles and also the next time that Jacobson was there. She saw Love give Jacobson money. She also testified to seeing King give $7,000 or $8,000 to Jacobson. She described other trips that Love and King made to Los Angeles for the purpose of buying amphetamines.

Patty Wallis gave similar corroborative evidence.

The defendant testified in his own behalf at the trial and said that he was engaged in the automobile business in Los Angeles in partnership with Robert Koch. He denied any involvement in the amphetamine traffic or any knowledge that McCallum was engaged in such dealings. He did admit coming to Colorado to ask Nathan King for the return of some money which, according to him, was on a business transaction. He said that McCallum had asked him to pick up money from King on his (McCallum's) behalf.

Koch, the partner of Jacobson in the automobile business, testified that the car dealership in which they were engaged had only made 10 to 15 sales between April 1975 and January 1976, and was not profitable. He testified that in November 1975, he came to Colorado with 250,000 tablets of amphetamines to sell. These he delivered to King. His partners in the drug business were Jacobson and one Elias. Koch said that he, at the time, discussed the details of the trip with Jacobson, describing Jacobson as his partner in the drug business. Later, following his conferring with Jacobson, he made another sale to King and Love. At the time of the sale to King and Love, according to his further testimony, Koch and Jacobson adopted a new policy as to payment.

The points which are advanced by Jacobson on this appeal are:

1. Whether the jury instructions as to reasonable doubt and presumption of innocence were erroneous.

2. Whether the testimony of Robert Koch, which described drug sales other than that charged in the indictment, was properly admitted on rebuttal.

3. Whether the jury instruction as to the use of acts and statements by co-conspirators was erroneous.

4. Whether the special parole term which was included as a part of the sen-

tence was in harmony with the statutory penalty.

## I.

The transcript which set forth the court's charge to the jury as the same was read from written instructions contained a statement that the defendant was presumed guilty, and also the statement that it was unnecessary to prove guilt beyond a reasonable doubt.

■ The record also contained an *ex parte* order seeking to correct the record. When oral arguments were presented, the court was unable to obtain any agreement from counsel as to the exact charge that was given. In order to obtain clarification of this, the cause was remanded to the district court for the sole purpose of obtaining a correction of the record by the trial court, if it were subject to being corrected. The trial court was directed to conduct a hearing or other proceedings with both sides present for the purpose of determining whether the record as to the trial court's charge to the jury was correct. Following these proceedings, the record was directed to be certified by the Clerk for the United States District Court to this court as a supplement. The trial court held such a hearing and certified the record back to this court. Following the hearing, the transcript was changed to conform to the actual proceedings. It was corrected to read: "The law presumes a defendant to be innocent of crime." The other error was also corrected to read: "It is not required that the government prove guilt beyond all possible doubt."

As a result of the corrections which are noted, the claim that the charge to the jury was not correct is no longer an issue. The actual charge correctly stated the law, and we need not give further consideration to this alleged error in the charge.

## II.

■ Appellant next argues that the trial court committed error in receiving the testimony of Robert Koch, which testimony has been described above. The assertion is that Koch's testimony was inadmissible under Fed.R.Evid. 404(b) because there was evidence of another crime which was not charged in the indictment. The mentioned rule is, to a large degree, a codification of the law of evidence which existed prior to the adoption of the Federal Rules. It provides as follows:

Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Generally, it is said that evidence of prior or similar acts constituting crimes is inadmissible. However, the rule as it existed at common law and as it exists at the present time recognizes that such evidence may be admissible for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See United States v. Burkhart*, 458 F.2d 201, 204 (10th Cir. 1972); *United States v. Nolan*, 551 F.2d 266 (10th Cir.), *cert. denied*, 430 U.S. 986, 97 S.Ct. 1685, 52 L.Ed.2d 381 (1977); *United States v. Gano*, 560 F.2d 990 (10th Cir. 1977).

■ Here it can be said that the testimony was properly admitted for purposes of rebuttal since the accused had taken the witness stand and had denied entirely that he had had anything to do with the selling of drugs. From his testimony one would understand that he was a respectable automobile dealer in California and that the drug selling was a mistake or an accident; that he was a victim of circumstances. In view of this, the testimony of Koch was germane. It rebutted the evidence of Jacobson and dispelled the notion that he was a victim of circumstances. The trial court correctly instructed the jury that the evidence was to be considered only as it related to intent, plan, knowledge, identity, or absence of mistake or accident. The court added that the defendant was not to be

tried or convicted of any crime not charged in the indictment.

■ The trial court, of course, has a broad discretion in receiving evidence and, particularly, that having to do with the exception to Rule 404(b). *United States v. Nolan, supra,* at 271. The action of the trial court in receiving the evidence and in charging the jury was not an abuse of discretion. We conclude that the evidence was in accordance with both the letter and the spirit of the cited Rule.

### III.

Objection is made to the instruction which the trial court gave in connection with the responsibility of Jacobson for acts and statements of co-conspirators. The names of McCallum, Hurteau, Wallis and Koch were named as parties whose acts, omissions, declarations or statements could be used once the jury was satisfied that Jacobson was in conspiracy with those people, and that the statements were made in the course of and in furtherance of the conspiracy.[1] Objection is made to the fact that there is no requirement that the acts and statements be made knowingly and that the co-conspirators have knowledge of the conspiracy.

The instruction quoted is not the single and exclusive one given by the court. Subsequent instructions clarified what was said. The judge instructed the jury that once it found "that a conspiracy existed and that the defendant was one of the members that the statements thereafter knowingly made and the acts thereafter knowingly

done by any person likewise found to be a member may be considered by the jury as evidence in the case as to the defendant found to have been a member . . ."

■ Implicit in the existence of a conspiracy is the essential aspect that it was entered into knowingly. However, the trial court emphasized again and again the necessity for knowing participation. Thus, the judge's instructions conformed to our decision in *United States v. Pennett,* 496 F.2d 293, 296 (10th Cir. 1974).

It was also brought home to the jury that a participant in a conspiracy must have participated "willfully," with "intent to advance or further some object of the conspiracy," and with knowledge of the conspiracy. It thus excluded consideration by the jury of statements of persons who inadvertently furthered the conspiracy.

We conclude that the charge was not erroneous in any respect.

### IV.

The final contention is that the court erred in imposing a special parole term as part of the sentence.

The statute which formed the basis of the charge was 21 U.S.C. § 846 (1970). It provided that:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

1. The portion of the instructions to which the defendant objected is as follows:

The acts, omissions, declarations or statements of these witnesses, Mr. McCallum, Miss Hurteau, Miss Wallis, Mr. Koch, and other parties are not to be considered as the acts, omissions, declarations or statements of Defendant Jacobson unless and until you are satisfied beyond a reasonable doubt that Defendant Jacobson entered into a conspiracy . . . and that Mr. Jacobson was an active, knowing and willful participant in such conspiracy at the time of the acts, omissions, declarations or statements of these witnesses . . . and that [they] were made during

the course and in the furtherance of the conspiracy . . . .

If you find from the evidence beyond a reasonable doubt that Mr. Jacobson entered into the conspiracy with the other named parties and . . . others and knowingly and willingly participated therein for purposes of bringing about the criminal objective of such conspiracy and in furtherance of the conspiracy, then in that event, you may consider as evidence against Defendant Jacobson all of the acts, omissions, declarations or statements made by the witnesses and participants in the course and in furtherance of the conspiracy.

868

The punishment for the offense which the defendant is charged with conspiring to commit, as provided in 21 U.S.C. § 841(b)(1)(B), is imprisonment of not more than five years, a fine of not more than $15,000, or both. The same paragraph in this section says that "[a]ny sentence imposing a term of imprisonment under this paragraph shall . . . impose a special parole term of at least 2 years in addition to such term of imprisonment." He says that the "imprisonment or fine or both" of § 846 does not embrace the special parole term, which together with imprisonment and fine, may constitute the sentence under § 841.

The government, on the other hand, focuses on the words "the maximum punishment prescribed for the offense." This they say allows the court to impose a sentence for conspiracy to commit the act which is the object to the extent that it is provided in the statute defining the object.

The authorities hold contrary to the position of appellant. *See United States v. Dankert*, 507 F.2d 190 (5th Cir. 1975); *United States v. Wiley*, 519 F.2d 1348, 1351 (2d Cir. 1975), *cert. denied*, 423 U.S. 1058, 96 S.Ct. 793, 46 L.Ed.2d 648 (1976); *United States v. Armedo-Sarmiento*, 545 F.2d 785, 794–95 (2d Cir. 1976), *cert. denied*, 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977); *United States v. Rich*, 518 F.2d 980, 986–87 (8th Cir. 1975), *cert. denied*, 427 U.S. 907, 96 S.Ct. 3193, 49 L.Ed.2d 1200 (1976). In the cases just cited, sentences which included special parole terms under § 846 were approved. The argument made here was not presented. *Cf. Fassette v. United States*, 444 F.Supp. 1245 (C.D.Cal.1978), in which it was held that a special parole term could not be imposed for a violation of § 846.

 From the wording in § 841(b)–(c), it would appear that Congress viewed the special parole term as being a part of the term of imprisonment to which it was appended. Paragraphs (1) to (3) of § 841(b) all make a special parole term mandatory whenever imprisonment is also imposed. Thus, a parole term may never be imposed without imprisonment; it must always accompany imprisonment. Section 841(c) provides, in addition, that violation of the special parole may result in an increase in the original term of imprisonment to the extent of the length of the special parole term. It is impossible, therefore, to accept the argument that the parole term is to be imposed only where the charge is violation of the substantive provision. It is logical to view the reference to imprisonment in § 846 as intending to incorporate all of the imprisonment provision in § 841(b).

The trial court's imposition of sentence is in accordance with the statutes.

The judgment of the district court is affirmed.