**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ernie LEWIS, Defendant-Appellant.**

**No. 81–2435.**

United States Court of Appeals,
Tenth Circuit.

Feb. 15, 1983.

Certiorari Denied May 23, 1983.
See 103 S.Ct. 2127.

James F. Blackmer, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty., and Benjamin Silva, Jr., Asst. U.S. Atty., Albuquerque, N.M., on brief), for plaintiff-appellee.

Michael L. Rosenfield, Reiselt & Rosenfield, P.A., Albuquerque, N.M., for defendant-appellant.

Before DOYLE and McKAY, Circuit Judges, and BROWN,* Senior District Judge.

WILLIAM E. DOYLE, Circuit Judge.

The above captioned case is companion, so to speak, to *U.S.A. v. Marsh*, 700 F.2d 1322. However, both apellants argued separate and distinct points on appeal.

Ernie Lewis and others were indicted on one count of conspiracy to import marijua-

na. Lewis and Marsh were convicted by a jury and Lewis received a sentence of three years imprisonment and a fine of $500.00. The trial was before the United States District Court for the District of New Mexico. In this instance a timely notice of appeal was filed.

The investigation which led to Lewis commenced in April of 1979, at which time law enforcement officials discovered an abandoned aircraft in southeastern Colorado. The officials believed that the aircraft was used to transport large amounts of marijuana. The owner of the plane was never located. However, some time later, in November of 1980, one William L. Jackson disclosed to drug enforcement investigators that he knew about various illegal drug activities, including the incident which preceded the abandoning of the airplane. Jackson provided the officials with a detailed account of the conspiracy involved and also of Lewis's involvement in the drug smuggling scheme.

Jackson was not indicted as a co-conspirator. At the trial he was a key witness for the government. He testified that he was first contacted by Steve Mara and Wayne Dakin who solicited him to locate a suitable landing site for a DC–7 airplane loaded with marijuana, and which was to have been flown from Colombia to the United States. Jackson stated that he called Lewis to enlist his help and Lewis told Jackson to expect a call from an individual named "Lucky", who might know of a landing strip for the plane. Jackson also discussed the venture with other people. Lucky called Jackson and the two men met with Mara to examine a possible landing site. The site proved to be unsuitable and Jackson again contacted Lewis. He stated that during the second conversation with the defendant, he was told that Lewis did not have another site in mind, but he would contact Jackson if something came up.

* Honorable Wesley E. Brown, Senior District Judge, United States District Court for the Dis- trict of Kansas, sitting by designation.

Further testimony of Jackson was that after the plane was found, Lewis telephoned Jackson and as part of that call he demanded to know why he had not been paid for the illegal use of the landing site. Jackson responded that he, too, had received no money for his efforts.

At trial Lewis took the stand in his own behalf and testified that he did not know a person named Lucky. He stated that although he knew Jackson, he denied having any conversations with him or anyone else regarding the importation of marijuana into the United States. He particularly denied that he called Jackson to tell him a person named Lucky could help him.

On cross-examination Lewis testified that he first met Jackson in late 1977 or early 1978. Lewis denied that Jackson was involved in drug smuggling activities. He testified that he did not know what was required to smuggle drugs into the United States or the distribution of them in this country. There was a bench conference immediately after this, and the government approached the bench to determine whether the defendant could be questioned pursuant to Rule 404(b), Federal Rules of Evidence, about a similar drug smuggling incident in which Lewis and Jackson were involved which occurred in mid-1978. The court overruled the objection and allowed the questioning, after first inquiring into the government's purposes for the inquiry. The government attorney stated that the questioning was to refute lack of knowledge or mistake and to show intent.

After that the government proceeded to ask Lewis about an earlier drug deal in which he was allegedly involved. The earlier scheme was similar to the one involved at bar, in that it was a conspiracy to import marijuana into the United States by aircraft. Lewis, however, denied any knowledge of the earlier transaction.

Larry Jackson was recalled and testified over objection that in mid-1978, he and the defendant had conspired with others to import marijuana into the United States by airplane. Jackson further stated that defendant invested $1,000 toward the venture, and was to have been responsible for unloading the drugs in New Mexico. Lewis was found guilty by the jury in the present case.

The sole issue on this appeal is raised by the contention of the defendant that the trial court erred in admitting evidence of defendant's alleged involvement in the earlier drug transactions. The issue is whether the evidence that is challenged constitutes violation of Rule 404(b), Federal Rules of Evidence.

The grounds on which the defendant objects to the evidence in question is that it was rebuttal testimony which was remote in time and did not show knowledge of a common scheme or plan on defendant's part. Objection is also made to the offer of Jackson's testimony after the defendant denied that he had any knowledge of an earlier transaction.

Rule 404(b) provides as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The comment of the Advisory Committee on Proposed Rules is to the effect that other purposes for which such evidence may be used is not exhaustive, and this circuit has recognized in a large number of cases that such evidence may be admissible for purposes such as proof of intent, motive, opportunity, preparation, plan, knowledge, identity, absence of mistake or accident, and so on. *United States v. Jacobson,* 578 F.2d 863 (10th Cir.1978), *cert. denied,* 439 U.S. 932, 99 S.Ct. 324, 58 L.Ed.2d 327 (1978); *United States v. Gano,* 560 F.2d 990 (10th Cir.1977); *United States v. Nolan,* 551 F.2d 266 (10th Cir.1977), *cert. denied,* 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977).

The first step at the outset is to examine the record that was made on this. It was revealed prior to the trial itself that this kind of evidence was going to be offered and Judge Mechem told counsel for the government that he was not to make any mention of it before the jury until the issue had been submitted to the court. The U.S. Attorney said that he intended to impeach the witness. He continued:

He's now stated that he does not understand or does not know what it takes to smuggle drugs into this country and does not know what it takes to distribute drugs in this country. In 1978, Your Honor, Mr. Ernest Lewis was involved in a marijuana smuggling conspiracy out of Phoenix, Arizona, and during that time he was helping finance that, and he was also helping—he was going to distribute that marijuana. I believe, Your Honor, that I can impeach him with this at this time as a similar incident. This marijuana was to be flown in from out of the country and into this country, where he was going to receive it and distribute it.

He was then asked how he was going to establish it, and he answered through Mr. Jackson's testimony and through some testimony of an agent, and, in fact, that they had corroborated some of that information. The judge then said that he could ask him about it. The defendant objected on the ground that he had made a motion *in limine* about any prior criminal activity and the court had ruled that "if we didn't open the door, then the government was not going to be afforded that same opportunity to go into those kinds of activities." He continued that he was very careful in his questions, and he limited his questions to the indictment and the charge in the indictment. The court however, disagreed and said, "No, that wasn't the way it was, Mr. Rosenfield. I just said if there was any prior activity that they wished to introduce, he would come to the bench before he inquired about it or discussed it. This was the limitation that was put on it."

The court finally ruled, after hearing the arguments: "Fine. No, he can inquire. If he can't back it up, though, that's a whole different ballgame, because he's putting himself in a predicament of probably having this Defendant dismissed out, if he can't bring something in to establish it." An objection was made, also, that this was out of time. The court, in the last analysis, ruled as it did because of the fact that the witness had pretended to have no prior experience whatsoever in the importing or selling of drugs, which was patently untrue.

The first question is whether the evidence offered is relevant to an issue of defendant's character. Counsel for the government offered the evidence to show that defendant did, in fact, know generally of drug smuggling activities and drug distribution in the United States after defendant had denied knowledge of such activities. The evidence of the prior very similar drug scheme was offered to refute this claimed lack of knowledge. However, that is not the entire answer to this. The offered evidence must possess probative value that is not substantially outweighed by any undue prejudice it may create. This is outlined in the Advisory Committee Notes to Rule 404(b). 28 U.S.C. Rules of Evidence at 109 (1975). Frequently this type of evidence does create some prejudice, but most all evidence does; the question is whether as a result of the weighing process there is adequate probative value to substantially outweigh the prejudice. If defendant's testimony were allowed to stand without admitting the other crimes evidence, the jury might have been left with the impression that defendant was pure and naive. So, refuting this impression is a use which is not outweighed by the prejudice the evidence of defendant's alleged involvement in prior drug schemes may have caused.

This case is not dissimilar with *United States v. Batts,* 573 F.2d 599 (9th Cir.1978), *cert. denied,* 439 U.S. 859, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978). The defendant in that case was convicted of importation of hashish and possession with intent to distribute hashish. During the cross-examination of

the accused he denied knowing that a charm on a necklace he wore was a spoon used for inhaling cocaine. The government introduced evidence on rebuttal showing that the defendant had offered and negotiated the sale of cocaine to an undercover agent seven months before the indictment involved in the case. The Ninth Circuit held that the evidence had been admissible under Rule 404(b). The court in *Batts* stated:

> In light of appellant's claimed lack of knowledge of cocaine, the uses of the coke spoon and the existence of the hashish in the El Camino [automobile], we believe that the probative value of this evidence showing appellant's true knowledge and involvement in drug activities clearly *outweighs* any prejudicial effect.

573 F.2d at 603.

The reasoning of the Ninth Circuit in the *Batts* case is fully applicable to this case. The evidence of the prior marijuana smuggling scheme demonstrated defendant's knowledge and involvement in drug activities.

In *United States v. Jacobson, supra,* the defendant denied any involvement in drug trafficking or the selling of drugs. The trial court ruled, however, that the testimony of Jacobson's business partner regarding other crimes was admissible. The court stated:

> [T]he testimony was properly admitted for purposes of rebuttal since the accused had taken the witness stand and had denied entirely that he had had anything to do with the selling of drugs. From his testimony one would understand that he was a respectable automobile dealer in California and that the drug selling was a mistake or an accident; that he was a victim of circumstances. In view of this, the testimony of [defendant's business partner] was germane. It rebutted the evidence of Jacobson and dispelled the notion that he was a victim of circumstances. The trial court correctly instructed the jury that the evidence was to

be considered only as it related to intent, plan, knowledge, identity, or absence of mistake or accident.

578 F.2d at 866.

There are other authorities. For example, *U.S. v. Gibbons,* 602 F.2d 1044 (2d Cir.), *cert. denied,* 444 U.S. 950, 100 S.Ct. 421, 62 L.Ed.2d 319 (1979). There the conviction was for distribution of heroin and evidence of defendant's possession of a small amount of cocaine. This was admitted to show that defendant was more "streetwise" than he pretended. *Cf. U.S. v. Bell,* 506 F.2d 207 (D.C.Cir.1974). Here there was a conviction of a narcotics offense. Evidence of prior sale by defendant was held to be properly admitted for impeachment purposes to refute defendant's statement he had never seen narcotics except on television.

The trial court in a situation such as the present case has a broad discretion in receiving evidence under Rule 404(b). *See U.S. v. Jacobson, supra.* Here the trial court gave the following limiting instruction to the jury as to the use of the challenged evidence:

> Testimony has been presented of other acts or wrongs committed by the Defendant Ernie Lewis at earlier times. This testimony was not offered to show that the Defendant committed the offense with which he is charged here and you cannot consider it at all for that purpose. You can consider only for the purpose of showing the Defendant's motives, intent, knowledge or absence of mistake or accident in this case. You can reject it entirely and not consider it at all if you see fit.

In conclusion, it is very apparent that the trial judge gave careful consideration to the evidence in question. The judge weighed the prejudicial effect of the other crimes evidence, and he warned the jury adequately concerning limitations on the use of such evidence.

We conclude that the judgment of the district court should be, and it is hereby, affirmed.

It is so ordered.