**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 14 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CHRISTOPHER DEAN ACEVEDO,

    Defendant-Appellant.

No. 96-2149
(D.C. No. 95-CR-251)
(New Mexico)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, Circuit Judge**, BALDOCK**, Circuit Judge, and **McWILLIAMS,**[**] Senior Circuit Judge.

On May 5, 1995, Christopher Dean Acevedo was charged by indictment with knowingly causing Jane Doe, an Indian female, to engage in a sexual act by using force, in Indian Country, in McKinley County, in the State and District of New Mexico, in violation of 18 U.S.C. §§ 1152, 2241(a) and 2246(2)(A). A jury convicted Acevedo and he was sentenced to imprisonment for 236 months to be followed by five years supervised release. Acevedo now appeals his conviction and sentence.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3

[**]Judge McWilliams was not present during oral argument. He was vouched in, however, and has listened to the tape recording of oral argument.

The principal issue in this appeal concerns the fact that the district court allowed government counsel on cross-examination of Acevedo, and, on rebuttal, to introduce evidence of another crime, wrong or act by Acevedo. Such, according to counsel, constitutes reversible error. Specifically, Acevedo had previously pled guilty in a state district court for McKinley County, New Mexico, to a charge of assault with intent to commit sexual penetration, which occurred on or about August 22, 1982.

By letter of August 17, 1995, the government in the present proceeding notified defense counsel of its intent to present evidence at trial of Acevedo's 1982 conviction, such notice being required by Fed. R. Evid. 413(b). Thereafter, counsel for Acevedo filed a motion in limine, asking the district court to exclude from the trial any evidence of Acevedo's 1982 conviction for sexual assault. The government filed a response to the motion in limine and a hearing was held thereon. At the conclusion thereof, the district court, in effect, granted the motion and barred the government from introducing any evidence of Acevedo's 1982 conviction in its case-in-chief. In so doing, the district court opined that, as concerns Fed. R. Evid. 404(b), evidence of the 1982 conviction was too remote in time and that, as concerns Fed. R. Evid. 413, the probative value of such conviction was outweighed by the risk of unfair prejudice.

Although the district court ruled that the government could not introduce evidence of Acevedo's 1982 conviction in its case-in-chief, it went on to indicate that such

evidence might be admissible on rebuttal, depending on evidence introduced by the defense. In this regard, the district court advised counsel as follows:

> Now, that brings us down to the issue of whether it might become admissible for impeachment purposes. And in regard to that, I am going to have to defer a ruling until I hear what the defense is.
> If the defense portrays a picture of Mr. Acevedo as a person who would never engage in conduct similar to this, I think that significantly increases the reasons for admitting this for impeachment. So without knowing what is going to happen in terms of a defense, I can't rule on that at this point, but I am not going to admit it during the Government's case in chief.

> MR. BAY: Your Honor, what if the Defendant raise a defense based on consent?

> THE COURT: That is what I expect the defense to be, and I had that in mind when I took that into consideration and made that ruling. And I understand that there may be that defense.
> The Defendant may testify simply that what occurred on this day was consensual. If he stays within those bounds and doesn't go beyond that in terms of character evidence, people saying that he is of a character that would never engage in criminal sexual conduct, if that is the type of defense that develops, then it's much more likely that this is going to be admissible in terms of impeachment of those witnesses or the Defendant himself.

> MR. FINZEL: That is, Your Honor, if it goes into character evidence, it would be more likely admissible is that what --

> THE COURT: If the defense portrays a picture of Mr. Acevedo as one who would never engage in such conduct on a non-consensual basis, then your risk of it being admitted for impeachment increases dramatically.

> MR. BAY: Your Honor would preserve the issue as to whether the evidence may become admissible either on cross-examination of the defense case or in the Government's rebuttal?

> THE COURT: Yes, uh-huh. But it will not be admissible during their case in chief.

MR. WINDER: Yes, Your Honor.

THE COURT: Is that clear enough?

MR. WINDER: Yes, Your Honor.

In line with the court's order, the government in its case-in-chief did not introduce any evidence of Acevedo's 1982 conviction, or any of the facts which formed the basis for the charge. When the government rested its case, counsel moved for a judgment of acquittal, which motion was denied. There then ensued colloquy between court and counsel as to whether, depending on the evidence presented by the defense on behalf of Acevedo, evidence concerning the 1982 conviction might become relevant and admissible. As indicated, the court stated that, depending on what was introduced by the defense, evidence of Acevedo's 1982 conviction might, or might not, become relevant and admissible.

Acevedo testified on his own behalf at his trial. The gist of his testimony was that he had consensual sexual intercourse with Jane Doe and that he did not use force.[1] On direct examination, the following colloquy occurred between Acevedo and his counsel:

> Q. Well, let me get this clear, are you upset now because you were unfaithful for your wife, to your wife, or are you upset because you forced yourself on this young woman?

---

[1]Jane Doe previously had testified, *inter alia,* that Acevedo threatened her with a knife, and that after he had forcibly raped her, he "told me that he was going to kill me and my family again and told me not to call the cops and that he was going to bring his gang."

A. Oh, no, Mr. Finzel, I never forced myself on this woman, I couldn't. I would never do that. I believed at the time, at the time I believed Ms. Kinsel [Jane Doe] was 20 years old.

Q. Uh-huh.

A. Had I known otherwise I would have never even entered that car.

When defense counsel concluded his direct examination of Acevedo, there was further colloquy between court and counsel about just what the government on cross-examination could ask Acevedo concerning his testimony given on direct examination that "I couldn't. I would never do that." The district court indicated that for "impeachment purposes," it would permit counsel to cross-examine Acevedo "regarding his statement that he would never do such a thing by asking him if, in fact, he had not done such a thing to Ms. Esquibel."[2] In connection therewith, the district court added that government counsel should "stay away from the matter of him having been convicted of a crime in relation to that."[3]

On cross-examination, the prosecutor asked Acevedo the following questions, without objection, and received the following answers thereto:

Q. (By Mr. Winder) Mr. Acevedo, on direct examination you testified that you would never assault a woman; isn't that right, sexually assault a woman?

___

[2]Karen Esquibel was the victim in the 1982 proceeding. At that time, her name was Karen Pino.

[3]The ruling of the district court was that the government could not offer a certified copy of Acevedo's 1982 conviction based on his plea of guilty to sexual assault, but could present testimony of the victim in that assault, Karen Esquibel.

A.  That is correct; I would never sexually, I would never rape a woman like that, no.

Q, Mr. Avecedo, do you know Karen Esquibel?

A.  Yes, I do.

Q.  Do you remember meeting Karen Esquibel on August 20th, 1982?

A.  Yes, I do.

Q.  And do you remember that when you met her that was the first time in your life that you met her at a party?

A.  I knew who Karen was, that was not the first time I met her.

Q.  And Karen Esquibel, her last name was Pino at the time, was only 16 years old?

A.  13 years ago.  I don't know that she was 16 years old, I can't state yes, that I do.

Q.  And in 1982 you were 25 years old?

A.  That is correct.

Q.  And you took Karen Pino to a remote location near Gallup, New Mexico; isn't that right?

A.  Karen Pino and I were on a date and I took her to a location near her residence, yes; that is correct.

Q.  And you drove her to that remote area in your truck; isn't that right?

A.  Yes, we were in my truck.

Q.  And you became angry and threatening; isn't that right, Mr. Acevedo?

A. 13 years ago.  In 1982, Karen and I had indulged in a lot of alcohol and we had a confrontation and yes, something occurred.

Q. And you removed some of the clothing of Karen Pino; isn't that right, Mr. Acevedo?

A. At one point; that is correct.

Q. And you forced Karen Pino to submit to vaginal intercourse; isn't that right, Mr. Acevedo?

A. No, that is not correct.

Q. And at the end of the assault you told Karen Pino that you would kill her if you told if she told anyone; isn't that right, Mr. Acevedo?

A. That is not correct.

On redirect examination, defense counsel questioned Acevedo in great detail concerning his contact with Karen Esquibel in 1982.  The gist of Acevedo's testimony was that he had an encounter with Esquibel and that, as he was taking her home, they parked the car he was driving in an isolated spot where they started kissing and "making out."  However, Acevedo denied having sexual contact with Esquibel, explaining that they had a quarrel and that when she slapped him, he "slapped her back."  He then took Esquibel to her home.

On rebuttal, the prosecutor called Karen Esquibel as its witness.  Without going into unnecessary detail, Esquibel testified that in 1982 she and Acevedo were at a party where alcohol and drugs were consumed in considerable amounts and that Acevedo offered to take her home in his truck.  Esquibel then testified that, en route, Acevedo

stopped his truck, physically assaulted her and raped her. Defense counsel did not cross-examine Esquibel.

At the outset, we note that on appeal counsel does not challenge the sufficiency of the evidence to support the jury's guilty verdict. The only challenge to Acevedo's conviction is that the district court committed reversible error in allowing the prosecutor on cross-examination of Acevedo to make inquiry as to Acevedo's statement on direct examination that he did not force himself on Jane Doe and that "I couldn't. I would never do that." The initial inquiry by the prosecutor on cross-examination was whether Acevedo had, or had not, testified on direct examination that he would never sexually assault a woman, and, without any objection to the question, Acevedo said "That is right. I would never sexually, I would never rape a woman like that."

The prosecutor then questioned Avecedo concerning his confrontation with Esquibel in 1982. And, as indicated, defense counsel, on redirect, inquired into Acevedo's confrontation with Esquibel in much more detail. To round out this picture, on rebuttal, the prosecution called Karen Esquibel as a witness and she then gave her version of her 1982 meeting with Acevedo, including testimony that Acevedo forcibly raped her and then told her not to "call the cops."

As indicated, the district court ordered the prosecutor not to offer any evidence of any kind concerning the 1982 conviction in its case-in-chief, which he did not. In so doing, the district court clearly advised all that, depending on what evidence was

introduced in Acevedo's defense, evidence concerning the 1982 assault might be admissible by way of rebuttal, for impeachment purposes. At the same time, however, the court said that it would not allow the prosecution to introduce a certified copy of the 1982 conviction. So, all knew that if the defense only presented evidence that Jane Doe consented to sex with Acevedo, evidence concerning the 1982 confrontation between Esquibel and Acevedo would not be allowed in rebuttal. However, all also knew that if the defense presented evidence, whether it be from Acevedo or others, that Acevedo's character was such that he could never sexually assault any female, then evidence concerning the 1982 sexual assault would in all probability be allowed in rebuttal.

It is hornbook law that any witness may be impeached by showing that his, or her, testimony is false or incorrect as to material matters. In the instant case, Acevedo, testifying in his own behalf, testified on direct examination that his sexual contact with Jane Doe was consensual, and did not involve any force on his part, though Jane Doe had testified earlier that Acevedo had indeed used force. On direct examination, and reiterated on cross-examination, Acevedo testified, in effect, that he could never use force to accomplish sexual contact with an unconsenting female. The prosecutor, on cross-examination, briefly inquired into Acevedo's contact with Esquibel in 1982, and then on redirect, defense counsel brought out in detail Acevedo's version of that encounter. In such circumstances, the district court did not err in allowing the prosecution, on rebuttal, to call Esquibel as a witness and permitting her to give her version of that encounter. In

support of our resolution of the matter, *see United States v. Lara*, 956 F.2d 994 (10th Cir. 1992) (holding that evidence of another prosecution was admissible to impeach defendant's testimony that he had never been prosecuted for anything but the current offense); *United States v. Brown*, 784 F.2d 1033 (10th Cir. 1986) (stating that prior burglary conviction was admissible as probative of defendant's truthfulness)*; United States v. Lewis*, 700 F.2d 1328 (10th Cir. 1983) (allowing evidence of a prior incident to refute defendant's testimony that he had no other experience with drugs); *United States v. Erb*, 596 F.2d 412 (10th Cir. 1979) (ruling that the district court did not err when it allowed the government to question defendant concerning a prior arrest since he had "opened the door").

In sentencing Acevedo to 236 months imprisonment followed by five years of supervised release, the district court, acting *sua sponte*, without request by the government or recommendation by the probation department, imposed a "condition" on the five years of supervised release. The condition was that within thirty days after Acevedo commenced his period of supervised release he write a letter of apology to Jane Doe for raping her. On appeal, counsel argues that the imposition of such a condition, in view of the fact that Acevedo has at all times insisted that his sexual contact with Jane Doe was consensual, was an abuse of discretion. We agree. To extract an apology from Acevedo for raping Jane Doe would seem to impinge on his Fifth Amendment right against self-incrimination. Such an apology conceivably could be the predicate upon

which a charge of perjury could be made against Acevedo for testifying at trial that his sexual contact with Jane Doe was consensual. Further, such apology could perhaps be admissible evidence in a civil proceeding by Jane Doe against Acevedo. In any event, we conclude that the condition imposed by the district court in the instant case requiring Acevedo to "apologize" to Jane Doe for raping her was, under the circumstances, an abuse of discretion.[4]

The judgment of the district court imposing a condition on Acevedo's supervised release that he apologize to Jane Doe for raping her, is reversed, and, on remand, the district court is directed to vacate that condition. Otherwise, the conviction and sentence is affirmed.

_____

[4]In *United States v. Edgin*, 92 F.3d 1044, 1048 (10th Cir. 1996), we spoke as follows:

> In most cases, a court may impose a term of supervised release after a term of imprisonment, 18 U.S.C. § 3583(a). A court enjoys broad discretion in setting a condition of supervised release, *see United States v. Prendergast*, 979 F.2d 1289, 1292 (8th Cir. 1992); *United States v. Showalter*, 933 F.2d 573, 574 (7th Cir. 1991), but such a term must meet three requirements:
>> The court may order, as a further condition of supervised release, to the extent that such condition--
>> (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
>> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
>> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a); any condition . . . it considers to be appropriate.
>> 18 U.S.C. 3583(d).

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge